H. J. Trabue v. G. W. McAdams.

CASE 16—PETITION—JUNE 22.

# H. J. Trabue v. G. W. McAdams.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. A LESSEE MAY BRING AND MAINTAIN AN ACTION IN HIS OWN NAME AGAINST HIS SUBLESSEE AND HIS ASSIGNEE, on the covenants of such sublessee to pay rental to him.

2. As the sublessee and his assignee recognized the original lessee as their landlord, they can not avoid paying rental to him in the absence of any apparent danger that they may be compelled to pay again to some one else. Such danger, if made apparent, would entitle them to an equitable defense, by which the rights of all the parties and all the claimants of the rents might be heard and adjudicated.

3. A LESSEE, BEING SUED FOR RENT, MAY PROSECUTE A CROSS-ACTION AGAINST HIS ASSIGNEE to compel him to discharge the rent and release him from responsibility.

4. THE PURCHASER OF A LEASE BECOMES THE ASSIGNEE by operation of law, if not by express covenant, and undertakes the responsibilities of an assignee of the unexpired term.

5. THE ASSIGNMENT OF THE TERM DOES NOT RELEASE FROM THEIR EXPRESS OBLIGATION lessees who were responsible both upon the express covenant in the written memorial and as lessees.

6. THE ASSIGNEE OF THE TERM BECOMES RESPONSIBLE TO THE LESSOR for the rents from the time of the assignment.

His liability did not depend upon his taking personal possession of the premises.

By taking the transfer the assignee was thereby notified of the terms of the lease, and thereby accepted them and undertook their performance.

7. THE ASSIGNEE OF A TERM AND LEASE CAN NOT DISCHARGE OR RELEASE HIMSELF FROM LIABILITY to pay the rental accruing after the transfer to him by anything short of an actual, absolute transfer or assignment of the unexpired term.

8. LEASE OF MINES BEING OWNED BY TWO PERSONS AS ASSIGNEES AND JOINT OWNERS, AND OPERATED BY ONE OF THEM.—So long as the other was a joint owner the possession of his co-tenant was in fact as well as in law his possession, and he was responsible to the original lessor for the accruing rents. The joint liability continues until the joint ownership ceased to exist.

H. J. Trabue v. G. W. McAdams.

GEO. C. DRANE, . . ⎫
CRADDOCK & TRABUE, ⎬ . . . . . . For Appellants,
                   ⎭
                      CITED

Taylor on Landlord and Tenant, sections 452, 448, 108.
Civil Code, section 728.
Shepherd's Touchstone, pages 231, 300.
Collier on Mines, page 82.
Roberts on Frauds, page 248.
4 Bibb, 538, Cox v. Fenwick.
1 Wash. on Real Prop. 337–339, 340, 329, 333, 336, 331, 444, 449, 452.
11 Bouvier's Institutes, page 416, section 2072.
1 Chitty's Pleadings, 49.
1 B. & P. 21, Taylor v. Shum.
4 Cru. on Real Prop. title 32, ch. 5, sec. 3; ch. 7, secs. 15, 16, 18, 19, 28.
6 Dana, 436.                          12 E. C. L. 334.
4 Dana, 337, Venable v. McDonald.
15 Ohio State, 186, Sutcliffe v. Atwood.
18 B. Monroe, 128, Todd v. Luckett.
11 Barb. 592, Graves v. Porter.
1 Str. 495, Poultney v. Holmes.
1 B. & C. 6, Bunter v. Warre.
18 E. C. L. 186.                      1 C. & P. 262.
12 E. C. L. 158, Phillips v. Mosely.
1 Sugden on Vendors, page 201.
3 Watts, 61, Campbell v. Shum.
6 Ex. 730, Smith v. Howell.      42 Paige, 78.
6 Monroe, 604, Williamson v. Richardson.
27 Alabama, 630, Dorrence v. Jones.
27 Vermont, 54, Overman v. Sandborne.
3 Peters, 50, Wilkinson v. Watkins.
8 Barr, 111, Fisher v. Milliken.
15 Vermont, 488, Tingry v. Watkins.
3 Monroe, 65, Bruce v. Halbert.
1 Vesey, jr. 235.                      7 Hill, 253, 257.
3 Bingham, 361, Knight v. Burnett.
11 Queen's Bench, 131, Doe v. Phillips,
23 Maine, 345, Prescott v. Ellingswood.
2 B. & Ald. 724, Doe, d. Handley v. Wood.
8 Queen's Bench, 757, Perry v. Fitzhowe.
1 Greenleaf on Evidence, section 264.
17 Johnson, 244, Port v. Jackson.
5 B. & C. 589, Burnett v. Lynch.
6 Ex. 730, Smith v. Howell.
3 Watts, 61, Campbell v. Shum.

J. F. & T. W. BULLITT, ⎫
                       ⎬  . . . . . . For Appellee,
W. P. D. BUSH, . . .   ⎭

CITED

Taylor's Landlord and Tenant, sections 444, 448, 449, 452.
Smith's Leading Cases, 99, Spencer's case.
Smith on Contracts, 70, 71.
Story's Equity, section 1522.
Adams's Equity, 86, 87.
Civil Code, section 728.
9 Cowan, 88, Armstrong v. Wheeler.
3 Barbour's Chancery, 52, Childs v. Clark.
2 Atkyns, 546, Valliant v. Dodemede.
2 Metcalfe, 295, Walker v. McKay.
1 Ves. & B. 15, Stines v. Morris.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

H. J. Trabue having leased of C. H. Trabue's heirs their coal mines at Hawesville, Ky., on August 2, 1863, leased the same for three years to W. C. Trabue and D. Looney; and however this may legally have operated an assignment of the lease to and for the benefit of the heirs of C. H. Trabue had they sought the benefit thereof, yet when nothing of this sort is manifested we apprehend the express covenant of W. C. Trabue and Looney to H. J. Trabue to pay him the agreed rent of one and a half cent per bushel for the coal mined, payable at designated times, authorized H. J. Trabue to bring and maintain a suit in his own name for its violation.

January 25, 1865, W. C. Trabue and D. Looney by writing sold, transferred, and assigned the full benefit of said lease to G. W. McAdams, and at the same time and by the same instrument sold, transferred, and delivered *"into the possession"* of said McAdams "all the boats, mules, cars, corn and provender, lines, tools, and implements of every kind and description, and all the property now in our use belonging to us, or in any wise connected with the *mining operations* carried on by us, up to this date, at Hawesville, Ky., under and by virtue of the within lease."

That the writing witnessing the lease, together with all the property and appurtenances included, was then and there placed in the legal possession of McAdams by virtue of this assignment, there can be no doubt.

McAdams, not only by express agreement, but by operation of law, became the assignee of said lease, and thereby undertook the responsibilities of an assignee of the unexpired term. Looney says that in reality he did not sell and deliver to McAdams his interest and part; that there was a private parol agreement between him and McAdams that he was to take Trabue's interest on the payment of two thousand five hundred dollars to McAdams, that being the amount paid by him to Trabue, and that afterward he paid this sum to McAdams.

The full amount of the rents not being paid to H. J. Trabue, he brought this suit against W. C. Trabue and Looney as lessees, and against McAdams as assignee.

W. C. Trabue answered confessing his liability, and setting up McAdams's responsibility because of the covenants in the written assignment of the lease which was signed by McAdams, himself, and Looney, made McAdams a party, and prayed judgment, and that he be compelled to discharge the rent and release him from responsibility.

McAdams resists responsibility on two grounds:

1. That he had never been in possession of the mines as assignee.

2. That he had assigned the same to Looney, who had continued to occupy, use, and enjoy the lease.

The writing transferred and assigned "the full benefit of the within lease" with another covenant that "we guarantee to said McAdams the full, complete, and uninterrupted possession and benefit of all the rights and privileges embraced in the within lease for the unexpired term of three years.

This writing contains an assignment with covenant of pos-

session for the unexpired term, and an immediate delivery of possession. That McAdams then became responsible for the accruing rents to H. J. Trabue, the lessor or obligor in the written lease, scarcely admits of a doubt.

W. C. Trabue and Looney, being lessees, were responsible both upon the express covenant in the written memorial of the lease and as lessees, and their assignment of the term did not release them from their express obligation to H. J. Trabue. And so the assignee of the term and writing evidencing the lease became responsible to the lessor for the rents from the time of assignment. Nor does his liability depend upon personal possession of the premises. By taking the transfer he was notified of the terms of the lease, and thereby accepted them and undertook their performance. Nor could he discharge the undertaking or relieve himself from liability as assignee by anything short of an actual, absolute transfer or assignment of the entire unexpired term. Such an assignment he insists he did make to Looney; but when the testimony in the case is carefully scrutinized it does not, as we think, admit of any such conclusion.

Although W. C. Trabue and Looney both joined in the assignment of the lease to McAdams, it is evident that the real intention of the parties and the actual result of the transaction was the substitution of McAdams to the place of W. C. Trabue, Looney still retaining his interest in the leased premises and the partnership property, and not receiving one cent of the agreed consideration for the assignment; all of which he says was done under an agreement between himself and McAdams. Immediately after the consummation of the purchase Looney and McAdams left the mines for Louisville in company, and for some time after this Looney acted as the agent for McAdams in the sale of the coal taken from said mines.

Whether or not they were partners in the mining business

during this time does not clearly appear. The unsatisfactory and evasive manner in which Looney answers plain and simple questions touching subjects with which he must have been perfectly familiar, is calculated to excite a suspicion that he was not desirous that a complete disclosure of the actual relationship existing between himself and McAdams during the time he was ostensibly the sole possessor of the mines should be made. Enough, however, can be gleaned to establish that W. C. Trabue and Looney "delivered the mines partly to McAdams," and that he left them in charge of an agent. That for some considerable time afterward McAdams and Looney, if not partners, were joint owners of the lease, and equally interested in the boats, cars, mules, and mining utensils with which the mines were operated; that Looney acted as the agent of McAdams in the sale of the coal taken out of the mines; and that the business was carried on in the firm name of David Looney & Co.

So long as McAdams was thus the joint owner of the lease and the joint operator of the mines, the possession of his co-tenant, Looney, was in fact as well as in law his possession, and he was responsible to the original lessor for the accruing rents.

If this joint ownership ever ceased to exist, if McAdams, by an absolute assignment of his entire interest in the unexpired term, ever divested himself of possession and relieved himself from liability for subsequently accruing rents, such assignment is a substantive fact, susceptible of being clearly and unequivocally proven by the party to whom he assigned. He claims to have assigned to Looney, and yet when he makes the latter his witness, and asks him the direct question whether or not he did so assign to him his said interest, Looney, instead of answering categorically an inquiry which could not be misunderstood, states that he does not recollect when the assignment was made, but that when made it was "verbal." Again, he says that "after-

ward," meaning after the assignment by himself and W. C. Trabue to McAdams, "he paid the latter two thousand five hundred dollars, advanced by him to Trabue, and became the sole owner of the lease and property." In what manner he made this payment, why he took from McAdams no written evidence of his purchase, and how long "afterward," whether two years or two days, before the expiration of the lease, he does not see proper to state.

Such evidence as this, coming, as it does, from a witness not unfriendly to McAdams, and who knew all about the transactions concerning which he was called upon to speak, ought not, in our opinion, to be regarded as sufficient to establish satisfactorily the existence of a fact without which McAdams can not escape liability.

As the lessees, W. C. Trabue and Looney, by their covenants, recognized H. J. Trabue as their landlord, they can not be permitted to deny it in this suit, nor can their assignee be permitted to do so, in the absence of any apparent danger that they may be compelled to pay again to some one else. Such danger, if made apparent, would entitle them to an equitable defense, and a transfer of the case to the equity court, where the rights of all the parties and of all claimants of the rents might be heard and adjudicated.

W. C. Trabue is unquestionably interested in the issues involved; hence the rejection of his testimony was right. McAdams's responsibility to H. J. Trabue, if made out, will inure to the benefit of W. C. Trabue quite as much as the recovery by him of a direct judgment. Hence he was interested by cross-suit to compel a discharge of this obligation, and we think his cross-action is authorized by the amendment of December 16, 1857, to sec. 125, Civil Code.

It was therefore erroneous to dismiss the original and cross-actions against McAdams; and the judgment must be reversed, and the cause remanded for a new trial of the issues formed by

the pleadings in the original action, and in the cross-action of W. C. Trabue, upon principles consistent with this opinion.