## INDIANA NATURAL GAS AND OIL COMPANY *v.* HINTON.

[No. 19,865. Filed May 27, 1902. Rehearing denied November 7, 1902.]

LANDLORD AND TENANT. — *Gas and Oil Lease.*—*Assignment.*—*Breach of Covenant.*—*Complaint.*—*Exhibit.*—In an action against the assignee of a gas and oil lease for a breach of covenant, a copy of the assignment need not be filed with the complaint, since the action is not founded on the assignment but on the lease. *p. 401.*

SAME.—*Gas and Oil Lease.*—*Covenants Running With the Land.*—*Breach.* —Covenants of a gas and oil lease to pay rent and to furnish the lessor with gas to heat and light his dwellings on the premises, are covenants running with the land; and in an action against an assignee of the lease, an allegation that such assignee agreed to perform the covenants is not required. *p. 401.*

Indiana Nat. Gas, etc., Co. v. Hinton.

LANDLORD AND TENANT.—*Gas and Oil Lease.*—*Construction.*—A gas and oil lease executed on the 25th of July, 1889, provided in its first article that the lessees should drill a well within twelve months, or, failing to do so, pay lessor $56 yearly as rent. The ninth article of the lease stipulated that lessees would furnish gas to heat and light the dwellings on the premises demised on or before November 15th. *Held,* that while the two provisions in the lease were somewhat inconsistent they were both lawful, and the failure to drill a well upon the premises within a specified time did not excuse lessee from performance of covenant to furnish gas for dwelling.  *p. 403.*

SAME.—*Gas and Oil Lease.*—*Breach of Covenant.*—*Who May Maintain Action.*—The owner and occupant of lands leased for gas and oil purposes may maintain an action for a breach of a covenant in the lease to furnish gas for use on the premises, notwithstanding that such owner had conveyed the land to others to secure a debt. *pp. 404, 405.*

From Grant Circuit Court;  *H. J. Paulus,* Judge.

Action by Albert H. Hinton against the Indiana Natural Gas and Oil Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court, under §1337u Burns 1901.  *Affirmed.*

*W. O. Johnson, Foster Davis, J. C. Blacklidge, C. C. Shirley* and *Conrad Wolf,* for appellant.

*A. R. Long,* for appellee.

DOWLING, C. J.—This was an action upon a gas and oil mining lease to recover damages for the breach of a covenant to furnish gas to the lessor for the purpose of heating and lighting the buildings upon the premises demised. Demurrer to complaint overruled.. Answer in denial. Trial by jury, and verdict for appellee. Motion for a new trial overruled, and judgment on verdict. The rulings on the demurrer and on the motion for a new trial are assigned for error.

The facts as stated in the complaint were as follows: On July 25, 1899, one Joseph McGraw, being the owner of the west half of the northeast quarter of section ten, in township twenty-two north, range seven east, in Grant county, leased to J. S. Smith and H. C. Ziegler the priv-

ilege of drilling wells for oil, gas, and water thereon, and transporting these substances from said lands. Shortly afterwards Smith and Ziegler sold, assigned, and transferred their rights as lessees to the appellant, the Indiana Natural Gas and Oil Company. After the making of the lease, the lessor, McGraw, sold and conveyed the said lands, together with his interest in the lease, to William S. Beeson, and on March 2, 1896, Beeson sold and conveyed said lands, and his rights under said lease, to the appellee Albert H. Hinton. The said company has ever since the assignment of the lease paid to the successive owners of the said premises the money rent of $56 stipulated for in the lease. The appellee owned and occupied the lands from March 2, 1896, until January 6, 1900. Performance of the agreement to furnish gas according to the terms of the lease was demanded by the appellee, but was refused by the appellant. The value of the gas which should have been furnished by the appellant to the appellee was $200.

A copy of the lease was filed with the complaint, and was made an exhibit. It was in the usual form, and, among other provisions, contained the following: "The above grant is upon the following terms: (1) Second party agrees to drill a well upon said premises within twelve months from this date, or thereafter pay to the first party a yearly rental of $56 until said well is drilled. * * * (2) Should oil be found in paying quantities upon the premises, second party agrees to deliver to first party, in the pipes with which second party may connect the well or wells, the one-eighth part of all the oil produced and saved from the premises. (3) Should gas be found, second party agrees to pay first party $200 yearly, payable quarterly on demand, for each and every well which is transported or used off the premises, so long as the same is transported. (4) First party shall have, free of expenses, gas from the well or wells, to use at his own risk, to light and heat the dwell-

ings now on the premises, with pipe to conduct the same to said dwellings free of cost. * * * (9) Second party agree to furnish gas to first party for use at his premises on or before the 15th day of November." The lease was executed July 25, 1899, by Joseph McGraw, as lessor, and by J. S. Smith and H. C. Ziegler, as lessees.

The points made against the complaint are that no copy of an assignment of the lease by Smith and Ziegler to the appellant was filed with that pleading; that the complaint contains no averment that the appellant agreed to perform the conditions of the lease on the part of the lessees; that it was not alleged that any well was drilled on the premises leased; and that by the terms of the lease it appeared that upon the failure of the lessees to drill a well within twelve months after July 25, 1889, the only indemnity to which the lessor became entitled was a yearly money rent of $56.

The complaint shows a sale of the lease by Smith and Ziegler, the original lessees, to the appellant, and the payment thereafter by the appellant to the appellee of the money rent as it became due, so long as the appellee occupied the lands. The action was not founded upon the assignment, if there was one, but upon the lease itself; and therefore it was not necessary to set out an assignment, or to file a copy of it with the complaint. It is only when a pleading is *founded upon* a written instrument that a copy must be filed. §365 Burns 1901, §362 R. S. 1881 and Horner 1901; *Short* v. *Kerns,* 95 Ind. 431; *Clark* v. *Trueblood,* 16 Ind. App. 98, 100; *Barnes* v. *Mowry,* 129 Ind. 568.

The agreement of the lessees to pay the rent, and to furnish the lessor with gas to heat and light the dwellings on the premises demised, were covenants running with the land, and the appellant, as the assignee of the lease, was bound to perform them. Its tenancy under the lease was acknowledged by its payment of the yearly rent of $56, agreeably to the terms of that instrument, and, as assignee

and tenant, it was charged with the performance of these conditions.

"Covenants are either real or personal; the former are such as are annexed to an estate, or are to be performed on it, and are said to 'run with the land,' so that he who has the one is subject to the other. In order to run with the land and bind the assignee it must respect the thing granted or demised, *and the covenant must concern the land or estate demised.*" Wood, Land. and Ten. (2d ed.), §306. "An assignee is personally liable to the lessor upon all covenants which run with the land; the premises also remaining liable to a distress by the latter for rent." Taylor, Land. and Ten. (8th ed.), §109. "Where a covenant is for the benefit of the estate demised it runs with the land, and will extend to the assignee, though he is not named." Wood, Land. and Ten. (2d ed.), §307, and cases cited in note 1.

It is said in *Carley* v. *Lewis,* 24 Ind. 23, that: "A covenant for the payment of rent, whether it be made by the grantee of lands in fee, reserving rent to the grantor, or by a lessee for a term, belongs to that class of covenants which are annexed to, and run with, the land. The land itself is the principal debtor, and the covenant to pay rent is the incident. It follows the land upon which it is chargeable into the hands of the assignee. *Van Rensselaer* v. *Bonesteel,* 24 Barb. 365; *Vyvyan* v. *Arthur,* 1 Barn. & Cr. 410."

As the assignee of the lease is liable to the original lessor, or his assigns, only in respect of privity of estate, the lessor's right of action in no sense arises upon the assignment, unless he chooses to take advantage of special conditions for his benefit contained in it. Wood, Land. and Ten. (2d ed.), §337. See, also, *De Pere Co.* v. *Reynen,* 65 Wis. 271, 22 N. W. 761, 27 N. W. 155; *Salisbury* v. *Shirley,* 66 Cal. 223, 5 Pac. 104; *Bradford Oil Co.* v. *Blair,* 113 Pa. St. 83, 4 Atl. 218, 57 Am. Rep. 442;

*Fennell* v. *Guffey,* 139 Pa. St. 341, 20 Atl. 1048; *McCormick* v. *Young,* 32 Ky. 294; *Trabue* v. *McAdams,* 71 Ky. 74; *Bedford* v. *Terhune,* 30 N. Y. 453, 86 Am. Dec. 394; *Trask* v. *Graham,* 47 Minn. 571, 50 N. W. 917; *Waller* v. *Thomas,* 42 How. Pr. 337. An allegation that the assignee of the lease agreed to perform the covenants of his assignor was not required.

The proposition that the failure of the lessees to drill any well upon the premises excused the appellant from the performance of the covenant to furnish gas to heat and light the dwellings on the land is not sustained by the provisions of the lease as we understand them. The lessees agreed to drill a well within twelve months from July 25, 1889, or, failing to do so, to pay the lessor $56 yearly as rent. By article nine of the lease, the lessees covenanted that they would furnish gas to heat and light the dwellings on the premises demised on or before November 15th, which must be understood to mean November 15, 1889. The two covenants were independent of each other. The first was in the alternative. The latter was unconditional. A breach of the latter might occur before the time allowed for the exercise of the option of the lessees expired. Gas was to be furnished within four months, but the lessees had twelve months within which to decide whether they would drill a well for their own purposes. The two covenants may have been inconsistent, but both were lawful.

Some of the rules for the construction of ambiguous or doubtful covenants in leases are the following: "The whole of a covenant is to be taken together, and that construction to be given to it which renders the whole operative; and if there is any doubt or ambiguity upon the sense of the words, or if they are susceptible of two constructions, that construction is to be placed upon them that is most strong against the person employing them, to wit, the covenantor." Wood, Land. and Ten. (2d ed.), §303, p. 650. "If covenants refer to, or are dependent upon each

other they will be construed together, and every part will be given effect if possible, and every word will be made to operate so as, if it can be done, to effectuate the intention of the parties. If, however, the covenants are independent, they must be construed by themselves; but, even in construing such covenants, the other covenants will be examined to ascertain the true intention of the parties." Wood, Land. and Ten. (2d ed.), §303, p. 654.

We think the covenant to furnish gas to heat and light the dwellings on the land was an independent agreement, and that the lessees, or their assignee, were liable for its breach. Had the lessees, or their assignee, drilled a well within the four months, and had no gas been found, a different question would have been presented.

Appellant contends that the verdict is not sustained by the evidence, and that its motion for a new trial for that reason should have been granted. The particular point insisted upon is that it was shown by the proof that the appellee, at and before the alleged breach of the covenant sued upon, had conveyed the lands to Beeson and Myers, and therefore was not entitled to damages. On this branch of the case, the following facts were established by the evidence: On March 2, 1896, Beeson, who owned the land described in the lease, sold and conveyed it to the appellee. On February 3, 1898, the appellee executed to Beeson and his wife a deed absolute upon its face, but intended to secure a debt owing from appellee to Beeson. The instrument contained this proviso and agreement: "And, also, subject to the gas and oil lease now on said premises, and the said grantees to have the proceeds accruing from said lease." On February 23, 1899, Beeson and wife, at the request of appellee, conveyed the land by quitclaim deed to one Alexander J. Myers, from whom appellee had obtained a loan of money with which the debt to Beeson was paid off. On February 28, 1899, appellee and his wife also made a quitclaim deed to Myers. These deeds were

executed to secure Myers in the payment of the moneys lent by him to appellee. The appellee had the privilege of redeeming the land by paying the debt. On January 6, 1900, the appellee and his wife, and Myers and his wife conveyed the land by deed to James W. Lee, and the debt owing from appellee to Myers was paid from the proceeds of the sale. The appellee occupied the premises from March 2, 1896, the date at which he became the owner, until January 6, 1900, when the lands were sold and conveyed to Lee.

The deeds executed by the appellee to Beeson and to Myers were, in legal effect, mortgages only, and the appellee remained the owner in fee simple of the premises until they were sold to Lee. As such owner and occupant of the lands, the appellee was entitled to the benefit of the covenants of the lease running with the land, unless deprived of it for a portion of the time by the proviso and agreement in the deed of February 3, 1898, to Beeson. We think, however, that upon a fair interpretation the words, "the said grantees to have the proceeds accruing from said lease," refer to the $56 to be paid as money rent, the one-eighth of the oil produced to be delivered to the appellee, and the $200 per year for each gas-well from which gas should be transported beyond the premises, all of which "proceeds" the lessees had expressly promised to pay and deliver provided gas and oil should be found on the land in paying quantities. The covenant to furnish gas to light and heat the dwellings on the premises was one which could not be transferred to, or appropriated by, a person not in the possession of the land. Besides, the supposed transfer of the "proceeds" of the lease was conditional only, and by way of security for a debt. The creditors never had the possession of the land, and did not enforce their lien upon the lease. Their debts were paid in full. The appellee who occupied and used the lands was the only person injured by the breach of the covenant to furnish gas. The

appellee, therefore, had the right to maintain this action for the damages sustained by him, which were occasioned by the failure of the assignee of the lease to furnish gas to heat and light the buildings on the land.

It is entirely clear that the verdict was sustained by the evidence, and was not contrary to law. Judgment affirmed.