SARA B. PARSONS, Respondent, *v.* GEORGE R. TELLER, as Administrator with the Will Annexed of the Estate of DAISY F. K. SMITH, Deceased, Appellant.

CONTRACT BY INFANT — CONSIDERATION — RATIFICATION. The facts examined in an action upon an alleged contract executed by a decedent while she was an infant, to pay an annuity to a friend, and *held* that it was a mere voluntary provision for the plaintiff based on gratitude and affection and, therefore, without such a valuable consideration as would have supported an action had decedent been of age when she entered into it; and that certain payments made by decedent after attaining her majority and relied upon as constituting a ratification of such contract were insufficient for that purpose.

*Parsons* v. *Teller*, 111 App. Div. 637, reversed.

(Argued March 7, 1907; decided April 16, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 12, 1906, affirming a judgment in favor of plaintiff, entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John G. Milburn* and *Lewis Cass Ledyard, Jr.*, for appellant. There was no consideration for the contract of 1890. (*Sims* v. *Everhardt*, 102 U. S. 300 ; *McGreal* v. *Taylor*, 167 U. S. 688 ; *Lowell* v. *Daniels*, 2 Gray, 161 ; *Brown* v. *McCune*, 5 Sandf. 224 ; *Murphy* v. *Holmes*, 87 App. Div. 366 ; *Wheelwright* v. *Moore*, 1 Hall, 201 ; *Weller* v. *Hersee*, 10 Hun, 431 ; *Dolcher* v. *Fry*, 37 Barb. 152 ; *Spear* v. *Downing*, 34 Barb. 522 ; *Burnett* v. *Bisco*, 4 Johns. 235.) Even if there was a sufficient consideration to support the contract of 1890, that contract having been made by an infant, was voidable and unenforceable because it was not ratified by Mrs. Smith after she became of age. (Clark on Cont. 242 ; Hammond on Cont. 255 ; *Beardsley* v. *Hotchkiss*, 96 N. Y. 201 ; *Jackson* v. *Carpenter*, 11 Johns. 542 ; *Austin* v. *Patten*, 11 S. & R. 311 ; *Baylis* v. *Dineily*, 3 M. & S. 482.) The contract of 1890 was not merely voidable, but void, since it was made by an infant and appears, upon its face, to be, and must necessarily have been, to her prejudice. (*Tucker* v. *Moreland*, 10 Pet. 58 ; *McGreal* v. *Taylor*, 167 U. S. 688 ; *Oliver* v. *Houblet*, 13 Mass. 239.)

*Lyman M. Bass* and *Edward H. Letchworth* for respondent. The contract was voidable merely and not void. (*Henry* v. *Root*, 33 N. Y. 526 ; *Beardsley* v. *Hotchkiss*, 96 N. Y. 201 ; *Halsey* v. *Reid*, 4 Hun, 777 ; *Blinn* v. *Schwarz*, 177 N. Y. 252 ; *Hyer* v. *Hyatt*, 12 Fed. Cas. 11, 17.) The contract was duly ratified by Mrs. Smith after she came of age. (*Golson* v. *Ebert*, 52 Mo. 260 ; *Thompson* v. *Ketchum*, 8 Johns. 189 ; *Walsh* v. *Powers*, 43 N. Y. 23 ; *Beardsley* v.

*Hotchkiss*, 96 N. Y. 201 ; *Youmans* v. *Forsythe*, 86 Hun, 370 ; *Hunt* v. *Massey*, 5 B. & Ad. 902 ; *Orvis* v. *Kimball*, 3 N. H. 314.) There was a valid consideration for the contract. (*Fuller* v. *Artman*, 69 Hun, 546 ; *Forgotson* v. *Cragin*, 62 App. Div. 243 ; *Olin* v. *Arendt*, 27 Misc. Rep. 270 ; *Baird* v. *Baird*, 81 Hun, 300 ; 145 N. Y. 659 ; *Williams* v. *Whittell*, 69 App. Div. 340 ; *Kam* v. *Benjamin*, 10 App. Div. 419 ; *Hickok* v. *Bunting*, 92 App. Div. 167 ; *Ryan* v. *Growney*, 125 Mo. 474 ; *Ostrander* v. *Quin*, 84 Miss. 230 ; *Ingram* v. *Ison*, 80 S. W. Rep. 787.)

CULLEN, Ch. J. This action is brought against the defendant as administrator of the will annexed upon the following agreement executed by his testatrix : " This agreement, made this eighteenth day of December, in the year one thousand eight hundred and ninety, between Daisy King Smith, wife of Willoughby Statham Smith, and said Willoughby S. Smith, of London, England, of the first part, William J. King, as guardian of the said Daisy King Smith, of the second part, and Sara B. Parsons, now of Buffalo, of the third part :

" Witnesseth :

" Whereas, the party of the third part heretofore entered the employment of the said Daisy King Smith, then Daisy Fletcher King, upon the agreement that such payment should be continued whether so employed or not, or she should be otherwise provided for in case of the marriage of said Daisy Fletcher King ;

" And, whereas, said Daisy Fletcher King having now intermarried with said Willoughby S. Smith, and intending to live in England, desires to carry into effect such agreement and understanding ;

" Now, therefore, in consideration of the premises, the services heretofore performed by said Parsons and of one dollar to them in hand paid, the receipt of which is hereby acknowledged, the parties of the first part have covenanted and agreed and hereby do covenant and agree to pay to the said party of the third part annually during her life the sum

of eighteen hundred dollars in quarterly payments of four hundred and fifty dollars each, and the parties of the first part do hereby bind themselves, their heirs and representatives accordingly;

"And whereas, the said Daisy King Smith is now a minor, of the age of eighteen years;

"And whereas, the said party of the second part is her guardian, having in his custody her income during her minority, the parties of the first part do hereby authorize, empower and direct the party of the second part to pay the party of the third part such annuity commencing with the first day of December, 1890, and thereafter pay the same pending the minority of the said Daisy King Smith from any income in his hands belonging to her, and the receipt of the party of the third part shall be a good and sufficient acquittance to the party of the second part for all such payments.

"And the parties of the first part do hereby covenant and agree that they will indemnify and save harmless the party of the second part from any liability on account of any such payments, and that so soon as Daisy King Smith shall attain the age of twenty-one years, they will, by their solemn instrument, ratify and confirm all such payments.

"But in case of the decease of the said Daisy King Smith, the liability of the said Willoughby S. Smith under this agreement shall cease and determine.

"And the party of the second part hereby assents to the provisions hereof.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

"DAISY KING SMITH, [SEAL.]
"WILLOUGHBY STATHAM SMITH, [SEAL.]
"WM. J. KING, GUARDIAN, [SEAL.]
"SARA B. PARSONS. [SEAL.]"

Daisy King (Smith) was born in March, 1872; her mother died in her infancy, and she with her two brothers, who were some years older than herself, lived with their grandmother,

Mrs. Pratt, at Buffalo, until the death of the latter in 1885. The plaintiff, a distant connection of Mrs. Pratt, became a member of that lady's household in 1878, and so continued till the year 1884. While a member of Mrs. Pratt's household she was engaged in the care and education of the plaintiff. After her grandmother's death Daisy King, with one of her brothers, went to live with the plaintiff in a boarding house kept by the latter in New York city. She continued to live there, attending day school for some two years, after which time the plaintiff accompanied her to Europe, where they remained some six months. On their return Daisy King took an apartment in New York, where she and the plaintiff lived until December, 1890, when Daisy King married Willoughby Smith, a resident of England. After the marriage Mr. and Mrs. Smith removed to England, where they continued to reside until the death of Mrs. Smith, in February, 1902. At the death of Mrs. Smith there was found among her papers attached to the agreement, the subject of this suit, the following letter from the plaintiff to her and her answer thereto :

                                        "*March 1st,* 1888.
" My Dear DAISY :

" As you have often expressed your willingness to give me the sum of eighteen hundred dollars per year until you arrive at the age of twenty-one years, if you will write me to this effect I shall be very grateful.
                                        " Yours faithfully,
" To Miss DAISY F. KING.          SARA B. PARSONS."

                              " 503 FIFTH AVE., N. Y., *Mch.* 2, 1888.
" My Dear SARA :

" Your letter of the 1st inst. received. I am perfectly willing to give you the sum therein mentioned ($1,800 per year) until I reach the age of twenty-one years. I think I can say in all truth and sincerity there are few with whom I could have been constantly day and night as I have been with you and always have found them the same, true, devoted, faithful, fond, always willing to share and sympathize with me in my sorrow or joy as the case may have been. I can assure you

that I appreciate all your kindness in past years, and if at any time I can aid you or yours in any way it will only be a great pleasure to me to do so if such an occurrence may present itself. I trust we may always be together, that is, until either may find the proper person, one to whom we may give our heart and even after that. I agree to your offer and with many, many thanks, I am,

"Your sincere friend,
"D. F. KING."

From the time of the marriage of Daisy King up to her death the plaintiff was paid regularly the monthly installments of the allowance specified in the agreement, except that during a time, the plaintiff having become pecuniarily embarrassed, deductions were made for the purpose of settling with her creditors. After Mrs. Smith's marriage the plaintiff was in no respect a member of her household, nor did she render any services to the former. The relation of warm friendship, however, continued and Mrs. Parsons at times visited the deceased. Daisy King had inherited a substantial fortune, approximately three hundred thousand dollars. There is no contention that the plaintiff was not fully paid for such services as she may have rendered or expenditures she may have made for Daisy King as would have constituted the basis of any legal claim against the latter. Miss King had ample means and her guardian, her father, seems to have allowed her to live, if not luxuriously, at least with every comfort. The plaintiff had very narrow means, and there is no suggestion that at any time she made any demand on Miss King's guardian which was refused. The presumption must be that the guardian discharged any claim the plaintiff might have had during the period of Miss King's infancy, and there is no pretense to the contrary. This action is based solely on the agreement executed by Mrs. Smith while she was still a minor and her ratification of the agreement after she became of age. The trial court found as matters of fact both that there was consideration for the agreement executed by the deceased and that she ratified it after reaching her majority. As these

findings, however, have been affirmed by a divided court the question presented to us is whether there was any evidence justifying the conclusion reached by the trial court, and our examination of the record convinces us that neither has sufficient support.

There is little that can be added to the very clear opinion of Presiding Justice McLennan, who dissented in the Appellate Division. There are certain propositions of law that we regard as firmly settled. "An equitable consideration founded on mere love or affection or gratuity, which although it will support a contract as between the parties when executed, will not support an action to enforce an executory contract." (Story on Contracts, secs. 429, 465, 469; *Ehle* v. *Judson*, 24 Wend. 97; *Stafford* v. *Bacon*, 1 Hill, 532; *Cameron* v. *Fowler*, 5 id. 306.) But if there be an equitable obligation which would also be a legal one were it not for the legal disability of the party, such as infancy or coverture, then the obligation, which is not merely moral, but also equitable, is sufficient consideration to support a new promise after the disability of the promisor has ceased. (*Goulding* v. *Davidson*, 26 N. Y. 604.) The first question, therefore, presented is whether there was a valuable consideration which would have supported the contract sued on had the deceased been of age at the time she entered into it, for if the contract was without consideration, subsequent ratification without further consideration could not give it force. We think the evidence clearly shows that the contract was a mere voluntary provision for the plaintiff, based on gratitude and affection. The letter of the plaintiff of March 1st, 1888, characterizes unequivocally the relation between the parties and the nature of the plaintiff's demand. It is an appeal to the bounty of the testatrix, not for the payment or discharge of any claim. The answer of the testatrix confirms this view. When the testatrix married she went further than the plaintiff had asked, and promised not only to make the allowance of eighteen hundred dollars a year during her (the testatrix's) minority, but during the plaintiff's life. If there was any consideration

for the agreement to pay eighteen hundred dollars a year during the testatrix's minority, there certainly seems no consideration for the agreement to further continue the payment. Nor does the contract sued on evidence any real or substantial consideration. It recites that the plaintiff had entered the employment of the deceased "upon the agreement that such payment (what the payment is is not specified) should be continued, whether so employed or not, or she be otherwise provided for in case of the marriage of the said Daisy Fletcher King." The agreement on its face was for no specified time, and could be ended at any time. There was no claim for services rendered under the agreement, but the consideration was wholly prospective. The plaintiff did not agree to remain in the employment of the deceased, nor did she render any services thereafter. It is true that mere inadequacy of consideration will not avoid a promise to pay a specific sum (*Earl* v. *Peck*, 64 N. Y. 596), but in the case cited the trial court charged the jury that if the real intent and purpose of the note sued on was to go beyond any indebtedness and make a gift or present to the plaintiff, then it was void. In view of the recitals of the agreement itself, the previous correspondence between the parties and their relations, it seems to us plain that the agreement was a mere voluntary provision in favor of the plaintiff made by the deceased out of motives of gratitude and affection. We do not underrate the kindness and affection bestowed by the plaintiff on the deceased, nor did the deceased fail to appreciate it. As long as she lived the payments were regularly made to the plaintiff. The deceased became of age in March, 1893, and on April 13th of that year, within a month after becoming of age, she made her will by which she bequeathed eight thousand pounds, approximately forty thousand dollars, in trust, the income to be applied to the plaintiff during her life. The income of this fund fairly invested at four and a half per cent would equal the annuity specified in the agreement. A second will was made by the testatrix on March 11th, 1897, in which the same provision is made for the plaintiff except that the income is secured to

her use against possible claims of creditors. This last will has been probated and under it, by an order of the surrogate, after the lapse of several months, the plaintiff is receiving her full annuity.

We think these testamentary provisions are not without force in determining the character of the obligation into which the deceased entered when she executed the agreement of December, 1890. They tend to show that the deceased appreciated the fact that the agreement would not bind her estate, and intended by her will to secure to the plaintiff the payment she had promised. On the question of ratification they are of much greater importance. They are not mere self-serving declarations made in the party's own favor to avoid liability on the contract. The contract, even if originally supported by a sufficient consideration, could not become binding upon the deceased unless she ratified it after becoming of age. It is not the case of an executed contract, where failure of an infant to disaffirm within a reasonable time after becoming of age would of itself operate as a ratification. It required affirmative action by the deceased to impose the obligations of the contract upon her. The alleged ratification in this case is based on the fact that during Mrs. Smith's life she continued to make payments under the agreement. That the deceased intended to live loyally to her promise to the plaintiff is unquestionable, and she has done so. But the question remains whether by making these payments she intended to acknowledge and ratify the agreement of 1890 as imposing valid legal obligations upon herself and her estate, or a merely voluntary obligation which gratitude and honor required her to fulfill. The first payment made from the funds of the deceased after her becoming of age was in May, 1893. She had already then made the will containing the provision in the plaintiff's favor, and it is in the light of that provision that the payment of May, 1893, must be considered. So considered it should be interpreted as a payment out of the testatrix's bounty, not in pursuance of any legal obligation. The record is devoid of evidence, except

the mere fact of the payments, tending to show that the deceased intended to recognize the legal obligations of the contract of 1890, and these payments, under the circumstances, we think, were insufficient for the purpose.

The judgments of the Appellate Division and of the Trial Term should be reversed and a new trial granted, costs to abide the event.

GRAY, HAIGHT, WILLARD BARTLETT and HISCOCK, JJ., concur; EDWARD T. BARTLETT and CHASE JJ., dissent.

Judgments reversed, etc.