## SORENSEN *v.* SORENSEN.

1. MARRIED WOMEN—RIGHT OF HUSBAND TO WIFE'S SERVICES IN THE HOME.

Services rendered by a married woman as a member of her husband's family, in his home, being the ordinary services of a farmer's wife, belonged to the husband, and if any contract with her father-in-law for compensation for such services was legal, her earnings thereunder belonged to the husband notwithstanding the so-called married woman's act.

2. SAME—WIFE'S SERVICES IN HOME—RIGHT TO CONTRACT—STATUTES.

A void contract entered into by a married woman with her father-in-law for compensation for her services rendered as a member of her husband's family, would not be affected

by the passage of 3 Comp. Laws 1915, § 11478, entitling married women to their separate earnings, in the absence of the making of a new contract after the passage of said act.

3. Same—Trial—Instructions—Evidence.

Instructions by the trial judge that plaintiff would be entitled to recover for any services rendered by her to defendant independently of her husband, *held*, erroneous in the absence of any evidence to support them.

Error to Manistee; Cutler (Hal. L.), J. Submitted April 27, 1920. (Docket No. 83.) Decided September 30, 1920.

Assumpsit by Sigrid J. Sorensen against Fred W. Sorensen for services rendered. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*Thomas Smurthwaite*, for appellant.

*Harry F. Hittle*, for appellee.

Plaintiff is a daughter-in-law of defendant, having married defendant's son some time prior to the year 1908. In December of that year, after some correspondence, plaintiff and her husband removed from Kenosha, Wisconsin, to Michigan, and went upon defendant's farm in the county of Manistee. No arrangement was made between the parties as to possession at that time but in the month of March, 1909, it is the claim of the plaintiff that a contract was entered into between defendant and herself and her husband. She testified:

"Mr. Sorensen said my husband and I were to run the farm; my husband was going to do the general farming and I was to do the housework, and take care of the chickens, and make my butter; and for our services rendered we were to receive the farm, if we would stick to that until the time of his death; one-half to my husband, and one-half to me. Mr. Sorensen, my hus-

band and myself were present, and my husband heard the conversation. I know my husband heard it, because he said he wanted to do it. 'We will stick to that; we can do better at that than we can in Kenosha.' "

She further testified:

"I remember the time when Mrs. Fred Sorensen, the defendant's wife, died; it was February 22, 1912. I was living on the farm at that time. I remember having a conversation with Mr. Fred Sorensen shortly after his wife died. It was at breakfast time, and they were talking at the breakfast table; I was baking pancakes at that time. Mr. Sorensen, the defendant, told me that my share—as I was to have for my share all the household furniture; he said that belonged to me. I worked on the farm continuously after that, until about the 29th or 30th of October, 1918."

And on cross-examination:

"*A.* My husband and I were to run the farm and for our services rendered we were going to get the farm as stated. * * * We were to have our living; living and clothes; a good living, and then if we would stick to it, we were to get the farm at the time of his death. * * * My husband and I were to take care of the farm as long as Mr. Sorensen lived and he would give us the farm at his death.

"*Q.* Now, that was the agreement, as you understood it?

"*A.* That is as I said there; that was the agreement.

"*Q.* Now, then, Mrs. Sorensen, you were living with your husband at that time and have so lived from the time of your marriage until then, and you and your husband had lived together as husband and wife up to that time?

"*A.* Yes, sir.

"*Q.* And you continued to live together as husband and wife during all the time you were on this farm?

"*A.* Yes, sir.

"*Q.* And you are his wife yet?

"*A.* Yes, sir, I am."

Defendant and his son (plaintiff's husband) were

both sworn and denied absolutely the making of the contract as testified to by plaintiff. It was their claim that the original arrangement made between father and son was that the son should furnish from the farm produce such as was necessary for the use of his father and mother and in addition thereto pay to his father the sum of one dollar per day; that this arrangement continued for about two years, but that the son found himself unable to carry it out, whereupon a new bargain was made between them to the effect that the expenses of operation should be first deducted from the gross proceeds of the farm and the balance equally divided; and that such arrangement was in effect at the time of the trial.

Whatever the actual agreement between the parties was, plaintiff with her husband remained upon the defendant's farm until October, 1918, a period somewhat more than nine years. During this time she was absent on several occasions, due to ill health, for several weeks or months at a time. After a prolonged absence in the fall of 1918 she returned and her husband refused to permit her to remain, telling defendant that if she came back he (plaintiff's husband) would leave. This having been communicated to plaintiff, she left, and brought this action against defendant.

The first count in the declaration is a special count setting out the contract as claimed by plaintiff, its subsequent breach by defendant, and fixing plaintiff's damage at the sum of $5,630 (presumably one-half of the value of defendant's farm). There is a special count "in assumpsit" in which the same amount is claimed to be "due and payable from said defendant to the plaintiff for the services of the said plaintiff by her then and there performed as an employee of and for the said defendant at his special instance and request," and claiming damages in the sum of $5,630, the same as in the first count.

Upon the trial it was conceded by plaintiff's counsel that the contract, as set out in the first count, was absolutely void under the statute of frauds and that no recovery could be had thereunder; but it was claimed by plaintiff's counsel that a recovery might be had under the second count (the count "in assumpsit") for the value of the services rendered by the plaintiff to defendant under an implied assumpsit. Defendant's counsel urged that the second count was in fact not a count in assumpsit, but was for a specific sum claimed to be due plaintiff from defendant as "wages or salary," *i. e.*, as "agreed compensation." Objection was made to the introduction of any testimony under the declaration and the opening statement of counsel, which was overruled. The case was submitted to the jury by the court upon the theory that plaintiff might recover for the reasonable value of her services under an implied assumpsit, for such time as she remained upon the farm after the passage of Act No. 196 of the Public Acts of 1911 (3 Comp. Laws 1915, § 11478). Plaintiff recovered a judgment of $1,014.

A motion was made at the end of plaintiff's testimony and again at the conclusion of all the testimony for a directed verdict. Decision on this motion was reserved, pursuant to Act No. 217, Pub. Acts of 1915 (3 Comp. Laws 1915, § 14568 *et seq.*). In substance, the motion was for a directed verdict upon the ground that plaintiff, being a married woman, could not recover for her personal services rendered to the defendant without first showing consent or assignment from the husband to the wife, to collect in her own name and right wages earned by her for personal services rendered, and a further showing that the arrangement between the husband and wife was brought home to the knowledge of the defendant and assented to by him. The motion was denied and judgment rendered for the plaintiff.

BROOKE, J. (*after stating the facts*).    Defendant presents his case in this court under 15 assignments of error, which it is unnecessary to consider *seriatim.* It is first urged that the court erred in holding the so-called assumpsit count sufficient to enable plaintiff to recover upon the *quantum meruit.*    The count is in-artificially drawn, but under the liberal view now held as to pleading, it might be regarded as sufficient to support the judgment.    In view of the conclusions we have reached upon another branch of the case, how-ever, it is unnecessary to pass upon the question of pleading.

Assuming the truth of the plaintiff's testimony, we find that she and her husband entered into a contract with defendant by the terms of which they and de-fendant undertook jointly to run defendant's farm, the son doing the farming and the plaintiff doing the housework, in consideration that the defendant should, at his death, give the farm, one-half to each of them. From a very careful examination of the record we are satisfied that the defendant's version of the arrange-ment is sustained, not alone by the great preponder-ance of the evidence, but by the circumstances sur-rounding it.    However, we must, for the purpose of this discussion, assume that plaintiff's testimony is true.    Whatever work and labor she performed there-after up until October, 1918, was performed in re-liance upon said contract.    No new or other contract was ever made thereafter.    It is conceded upon all hands that the contract, if made according to plain-tiff's testimony, was illegal, and had it been legal when made and she performed services thereunder, her hus-band would have been entitled to her earnings not-withstanding the so-called married woman's act of this State.    *Glover* v. *Alcott,* 11 Mich. 471; *Tillman* v. *Shackleton,* 15 Mich. 447; *Randall* v. *Randall,* 37 Mich. 563; *Mason* v. *Dunbar,* 43 Mich. 407; *Harrington* v.

*Gies,* 45 Mich. 374; *Benson* v. *Morgan,* 50 Mich. 77; *Sines* v. *Superintendents of Poor,* 58 Mich. 503.

It is conceded, or at any rate the learned circuit judge instructed the jury, that plaintiff could not recover for the value of her services rendered prior to the passage of Act No. 196, Pub. Acts 1911 (3 Comp. Laws 1915, § 11478), which provides:

"Each and every married woman in the State of Michigan shall be absolutely entitled to have, hold, own, retain and enjoy any and all earnings acquired by any such married woman as the result of her personal efforts; and to sell or otherwise dispose of any and all such earnings, and to make contracts in relation thereto to the same extent that any such married woman could have or do if unmarried."

Plaintiff proceeded thereafter as she had before to perform her services.

It is the claim of the plaintiff (and the learned circuit judge so instructed the jury) that the passage of said act changed the relationship of the parties and that thereafter the law would imply an agreement between plaintiff and defendant to the effect that defendant should pay to plaintiff the reasonable value of her services. We find ourselves unable to agree with this view. Plaintiff went with her husband upon the farm of the defendant and there made it her home. Such services as she rendered were rendered as a member of her husband's family, in her husband's home, and were the ordinary services a farmer's wife renders in his own home. It may again be emphasized that after the passage of that act, plaintiff made no contract whatever in relation to her services. We are of the opinion that under the situation disclosed by this record, the statute (3 Comp. Laws 1915, § 11478) has no application. We first had the matter under consideration in the case of *Gregory* v. *Oakland Motor Car Co.,* 181 Mich. 101, where it is said by Mr. Justice STONE:

"It will be noted that our statute above quoted gives to each and every married woman the right to have, hold, own, retain, and enjoy 'any and all earnings acquired' by her. Can it be said that, in the performance by the wife of the ordinary duties of the housewife as a helpmate in the home of her husband, she has 'acquired' the right to her earnings? We think not. If such construction were to be placed upon the statute, then the wife would have a right of action against her husband for any and all domestic services or assistance rendered in the household. We think the statute means that all earnings acquired or service performed by her as the result of her personal efforts in any separate business carried on by her in her own behalf, or any services performed by her for others than her husband, belong to her; but that her husband is entitled to her labor, companionship, society, and assistance in the discharge of those duties and obligations which arise out of the marriage relation, and that these belong to him. Where she has a separate business the wife may recover for loss of time as if she were sole. *Fife* v. *City of Oshkosh*, 89 Wis. 540 (62 N. W. 541); *Fleming* v. *Town of Shenandoah*, 67 Iowa, 505 (25 N. W. 752, 56 Am. Rep. 354)."

Again, in *Blair* v. *Seitner Dry Goods Co.*, 184 Mich. 304 (L. R. A. 1915D, 524, Ann. Cas. 1916C, 882), this court, speaking of the act in question through the late Justice OSTRANDER, said:

"The legislature has relieved her of certain disabilities so called and has denied to her husband the right to her earnings and the profits of any business she may carry on. It has not, however, put her domestic duties and labor, performed in and about her home for her family, upon a pecuniary basis, nor meant to classify such duties as services, nor to permit her to recover damages for loss of ability to perform them."

It is claimed that the rules here laid down were avoided by the following instruction of the circuit judge:

"I charge you further, that in order for you to give a verdict for anything, in favor of the plaintiff in this

case, you must be satisfied that she went to work, and performed services for the defendant in this case, which inured to his benefit, independent of her husband absolutely; and in the event you find that by a preponderance of the testimony, then you will only find or give her credit for such work as was performed by her during the period from August 30, 1911, to December 15, 1918.   *   *   *

"On the other hand, if you believe that she was not working for her husband, and that the contract, as claimed by defendant, was not made; but that she worked independently on these promises as claimed by the plaintiff, then she is entitled to recover reasonable value for her services rendered."

The difficulty with these instructions is that there is no evidence in the case to support them. Even under the void contract as testified to by the plaintiff there is no indication that she was to perform services for the defendant for his benefit "independently of her husband."

The judgment must be reversed and, inasmuch as under our view of the plaintiff's testimony no recovery can be had by her, there will be no new trial.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.