J. V. LEYDIG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7109.  Promulgated January 29, 1929.

*Albert A. Jones, Esq.*, for the petitioner.
*F. S. Easby-Smith, Esq.*, for the respondent.

OPINION.

SIEFKIN: We have not been told the amount of income which the petitioner contends has been erroneously added to his reported income, but the deficiency notice informs us that the petitioner's tax of $14,132.20 is the result of a decision of the Commissioner of Internal Revenue that the entire amount of oil royalties received by the petitioner should be included in his income. The petitioner contends that half of these royalties belong to his wife and constituted no part of his own income. To support this contention he calls our attention to the work performed by his wife on the farm, to an oral agreement, to a written agreement, and to an assignment, all of which have been described in our findings of fact.

Considering, first, the work performed by the wife on the farm, we find that under the Revised Statutes of the State of Kansas, 1923, ch. 23, art. I, sec. 204, it is provided that the earnings of a married woman from her labor shall be her sole and separate property. In *Savage* v. *Modern Woodmen of America*, 84 Kans. 63; 113 Pac. 802, the Supreme Court of the State of Kansas made the following statement.

According to the usual interpretation of statutes similar to our own, the wife is entitled to treat as her separate property the proceeds of her labor outside of her ordinary household duties. 21 Cyc. 1393; 25 A. & E. Encycl. of L. 357.

A question for our consideration is whether Grace Leydig has performed any labor outside of her ordinary household duties, and whether, in case she has performed such labor, we can say that she is entitled to any particular amount as her separate property. We have been unable to find any Kansas decision involving farm labor holding that a wife is entitled to compensation for the assistance she may afford her husband in the work on the farm. An exhaustive examination of the law of other jurisdictions, however, discloses some cases of this nature. Some of these cases hold that a wife is entitled to have the proceeds from her labor on the farm as her separate property, but in every such case, some unusual element was present which influenced the decision of the court, e. g., the husband conducted a separate business, leaving the wife to manage the farm, or the

husband was incapacitated by ill health or by drunkenness. The case of *Sorenson* v. *Sorenson*, 211 Mich. 429; 179 N. W. 256, is more nearly in point for the purpose of the present case than any other case we have been able to find. The State of Michigan at the time of the decision of this case had a so-called Married Women's Act under which a wife was entitled to her separate earnings. In commenting upon the effect of this Act, the court made the following statement:

It is the claim of the plaintiff, (and the learned circuit judge so instructed the jury) that the passage of said Act changed the relationship of the parties, and that thereafter the law would imply an agreement between plaintiff [wife] and defendant [husband] to the effect that defendant should pay to plaintiff a reasonable value of her services. We find ourselves unable to agree with this view. Plaintiff went with her husband upon the farm of the defendant, and there made it her home. Such services as she rendered were rendered as a member of her husband's family, in her husband's home, and were the ordinary services a farmer's wife renders in his own home.

In the present case no effort has been made to show us that the services performed by the wife were other than the ordinary services a farmer's wife renders, or that they were outside of her ordinary household duties. No effort was made to show us what her services in connection with the farm work were reasonably worth and we are unable to find that any part of the purchase price paid for the two farms in question was her separate property. Therefore, we can not find that a trust arose for her benefit when the title to the property was taken solely in the name of her husband, or that she was the owner in law or in equity of any part of or interest in the real estate.

The oral agreement between the petitioner and his wife is of no benefit to the petitioner in this case. This oral agreement was no more than a promise made by the husband which, under the Statute of Frauds, could not be enforced in the absence of a writing. Revised Statutes of Kansas, 33–106. The later written agreement was to the effect that all moneys derived from the oil and gas royalty interests were to be the joint property of the husband and wife. This written agreement had no effect upon the question of whose income the royalties were, inasmuch as it only took effect after the income was received.

This leaves then for our consideration the assignment dated August 1, 1918. A brief examination of the nature of the property rights reposing in petitioner at the time the assignment was made is helpful in determining the force and effect of such assignment. We need not here indulge an extended discussion in an attempt to harmonize the apparent diversity of opinion concerning the nature of a landowner's rights in oil and gas under his land. The majority view seems to be in accord with *Kansas National Gas Co.* v. *Board*, 75 Kans. 335; 89 Pac. 750, in holding such rights amount to title. Where this view is

adopted, it is well recognized that such title as exists may be defeated by the oil or gas passing into or under the land of another. At the other extreme is the view that the landowner's rights therein amount merely to the exclusive right to drill on his own land and appropriate such oil and gas as he can bring to the surface. *State* v. *Ohio Oil Co.*, 150 Ind. 21; 49 N. E. 809. In affirming that decision, however, the United States Supreme Court points out that the property in the oil and gas is in the owners of the land in which the pool is found, as distinguished from the property rights in animals *ferae naturae* which are in the public. *Ohio Oil Co.* v. *Indiana*, 177 U. S. 190.

This diversity of views as to fundamental concepts of rights to oil and gas underlying land is resolved into distinctions without differences for purposes of the case herein presented. All jurisdictions recognize that the landowner may grant an oil and gas lease as an incident of his title. That the purported leases granted before and after the discovery were leases, as distinguished from conveyances of oil and gas in place, is clear. *Rawlings* v. *Armel*, 70 Kans. 778; 79 Pac. 683; *Dickey* v. *Buick Co.*, 69 Kans. 106; 76 Pac. 398.

The cases generally hold such a lease an incorporeal hereditament. See Thornton, The Law of Oil & Gas, 3d Ed., vol. 1, p. 78. It is likewise clear that the right to receive royalties under a lease is an interest in land. "Royalties [in the sense used] is another term for rent * * *." Thornton, *supra*, p. 387. Thompson on Real Property, vol. 1, sec. 240 says:

Rents are a specie of incorporeal hereditaments, and as such they are rights to receive money out of the profits of land. They issue out of and are collateral to corporeal property, but are no part thereof and exist independently of its possession or enjoyment. In the feudal economy, rent had a two-fold quality. It was regarded as something issuing out of the land as a compensation for the possession, and also as an acknowledgment by the tenant to the lord of his fealty or tenure. Unaccrued rents are not personal property. They are incorporeal hereditaments. They are an incident to the reversion and follow the land. They pass with a sale or devise of the land. If transferred apart from the land, the provision of the statute of frauds relating to sales of land applies. In fact, although separable from the reversion, they are, until such separation, part of the land.

The fact that the obligations to pay rent under the leases in question are in the form of a covenant, makes them none the less interests in land as such covenants run with the land. Thompson on Real Property, *supra*, p. 324. To the same effect is the decision in *Indiana Natural Gas & Oil Co.* v. *Hinton*, 159 Ind. 398; 64 N. E. 224, in which the court held the covenant to pay rent is real and runs with the land, "the land is the principal debtor and the covenant to pay rent is incident. It follows the land upon which it is chargeable * * *."

What has been said, as well as the discussion below, may seem to indicate that the right to royalty is real property. The royalty interest is, however, by statute (R. S. Kansas, 79–329, 330) classified as personal property for tax purposes in the State of Kansas. We have not examined the authorities at length to determine whether the right to royalty is real or personal property, the question being immaterial to the issues presented in the instant case, as the assignment was a writing which satisfied the statute of frauds if the interest be realty, and there was no subsequent attempt to assign, either orally or in writing. Our inquiry is not whether the property was real or personal but whether it is assignable and was in fact assigned. That it is an assignable right is no longer an open question. As a general rule it apparently passes as part of the lessor's reversionary interest in the land, but it may be severed from such reversion by assignment, conveyance or reservation. *Koen* v. *Bartlett*, 41 W. Va. 559; 23 S. E. 664. In *Robinson* v. *Jones*, 240 Pac. 957, and *Miller* v. *Sooy*, 120 Kans. 81; 242 Pac. 140, the Kansas Supreme Court assumes such right to be assignable. See also Thompson on Real Property, vol. 1, secs. 240 and 249, to the same effect concerning rights to rent generally.

The petitioner, at the date of the purported assignment, held the reversion in the tract of land that had already been leased. With respect to the same tract he held another interest—the right to receive the royalties under the lease, which was an assignable property right. He also held another tract of land at the time of the assignment on which he was then contemplating the grant of an oil and gas lease. He subsequently leased such property.

The terms of the assignment provided that petitioner " hereby and by these presents does assign, set over, transfer and convey to the said Grace Leydig, an undivided one-half interest in and to any and all oil and gas royalty interests which may have been heretofore or shall be in the future received or retained by the said J. V. Leydig." Manifestly, petitioner attempted to assign a share of the royalty interests then held by him or to be held by him upon the granting of additional leases upon the tracts recited in the instrument. We think there is no ambiguity in the instrument as to petitioner's intention. If there is such ambiguity, the evidence of record, that one lease had been granted and another was contemplated, makes petitioner's intention clear.

We think it clear that the assignment operated to vest one-half of the then existing royalty interest in his wife. Respecting the royalty interests which " shall be in the future received or retained," the assignment attempted to convey an interest in a property right not yet in existence. At the time petitioner held all rights respecting the oil and gas underlying the land. He might have conveyed the right to

rents and royalties in the oil and gas. The case of *Paxton* v. *Benedum-Trees Oil Co.*, 80 W. Va. 187; 94 S. E. 472, goes so far as to hold such a conveyance amounted to a transfer of an undivided interest in the oil and gas fee. But the instrument in question refers to an interest, the creation of which depends upon whether petitioner thereafter granted an additional lease on the land. In *Miller* v. *Sooy*, 120 Kans. 81; 242 Pac. 140, in interpreting an assignment substantially similar to the one under consideration, the court said:

We think the fair interpretation of the language is that it relates to leases made and to be made by the defendants, and not to those which might be executed by subsequent owners of the land.

*   *   *   *   *   °   *   *

* * * It seems clear that the title to the oil and gas did not pass to the plaintiff, for the defendants might have elected to develop the land themselves on their own account, in which event the plaintiff would have had no claim to the oil and gas produced. Or, if they had seen fit to allow the land to remain undeveloped, there is nothing he could have done to derive a benefit from his assignment.

For the reasons stated the assignment could not transfer any present interest in future leases as there was no existing interest upon which it could operate.

Nor can the instrument operate as an enforceable contract to convey upon subsequent acquisition as it was signed by one party only and was without adequate consideration. The record indicates that the petitioner and his wife had considered the wife as owning a one-half interest in the lands since acquisition. It seems a fair inference from the testimony that no pecuniary consideration, in fact, passed. Even though we assume the recited consideration passed, it is nominal and insufficient to make enforceable an executory promise to convey, as such contract requires a valuable consideration. *Parsons* v. *Teller*, 188 N. Y. 318; 80 N. E. 930; *Maynard* v. *Maynard*, 105 Me. 567; 75 Atl. 299; *Wilson* v. *White*, 161 Cal. 453; 119 Pac. 895; *Maloy* v. *Boyett*, 53 Fla. 956; 43 So. 243; *Bear Track Min. Co.* v. *Clark*, 6 Idaho, 196; 54 Pac. 1007; *Northrup* v. *Standifer*, 15 Ky. L. 740; 23 S. W. 348; *Lipscomb* v. *Adams*, 193 Mo. 530; 91 S. W. 1046; *Sprague* v. *Schotte*, 48 Ore. 609; 87 Pac. 1046; *Price* v. *Lloyd*, 31 Utah, 86; 86 Pac. 767; *Graybill* v. *Braugh*, 89 Va. 895; 17 S. E. 558.

For the same reason, inadequacy of consideration, it can not operate as a contract to share the royalty proceeds from the subsequent lease as they mature. In *Miller* v. *Sooy*, *supra*, it can be inferred from the facts and opinion, though it is not expressly stated, that there was an adequate consideration. The similar assignment in the cited case, whether legal or equitable being stated to be immaterial, was held a valid contract imposing the duty to divide the royalties when received. The assignment in the instant case can not operate in such

executory fashion, as it at best is an executory promise without valuable consideration.

With the effect of the assignment thus determined, there remains only the question whether the royalties arising from such property rights are taxable to the husband alone, or should be divided between them for tax purposes. Upon this question there have been a number of cases before the courts and before us. In a number of the cases it has been held that the income is taxable in its entirety to the husband (or one standing in a position identical or comparable to that of the petitioner in this case). *Bing* v. *Bowers*, 26 Fed. (2d) 1017; *Mitchell* v. *Bowers*, 9 Fed. (2d) 414; 15 Fed. (2d) 287; *Ormsby McKnight Mitchel*, 1 B. T. A. 143; *Fred W. Warner*, 5 B. T. A. 963; *Ashton Hamilton*, 7 B. T. A. 362; *George M. Cohan*, 11 B. T. A. 743; *Sam H. Harris*, 11 B. T. A. 871; *Charles F. Colbert, Jr.*, 12 B. T. A. 565; *Samuel V. Woods*, 5 B. T. A. 413; *Louis Cohen*, 5 B. T. A. 171; *Arthur C. Levering*, 5 B. T. A. 616; *Yale Kneeland*, 1 B. T. A. 150; *Alexander S. Browne*, 3. B. T. A. 826; *Hudson M. Knapp*, 5 B. T. A. 762; *Strand Amusement Co.*, 3 B. T. A. 770; *Arthur H. Van Brunt*, 11 B. T. A. 406.

On the other hand it has been held that at least a part of the income is taxable to the wife (or one standing in a position identical or comparable to that occupied by petitioner's wife in this case). *O'Malley-Keyes* v. *Eaton*, 24 Fed. (2d) 436; *Young* v. *Gnichtel*, 28 Fed. (2d) 789, distinguishing *Gavit* v. *Irwin*, 268 U. S. 261; *Hamilton* v. *Commissioner*, 24 Fed. (2d) 668, reversing *Ashton Hamilton* cited above; *William I. Paulson*, 10 B. T. A. 732; *C. R. Thomas*, 8 B. T. A. 118; *William W. Parshall*, 7 B. T. A. 318; *James R. Cray*, 7 B. T. A. 322; *M. L. Virden*, 6 B. T. A. 1123; *L. F. Sunlin*, 6 B. T. A. 1232.

In a related class of cases in which there was an alleged gift or transfer about the time of or prior to the sale, the cases turn upon the point whether the gift or transfer, if any, preceded the sale. *M. J. Sullivan*, 2 B. T. A. 1012; *Robert Jemison, Jr., et al., Trustees*, 3 B. T. A. 780; *Martin Zinn*, 3 B. T. A. 969; *Frederick H. Hoffman*, 3 B. T. A. 964; *Arthur Zinn*, 3 B. T. A. 974; *Harry C. Moores*, 3 B. T. A. 301; *John W. Bailey*, 3 B. T. A. 362; *John S. Gullborg*, 5 B. T. A. 628; *J. T. Liggett*, 5 B. T. A. 169; *Charles W. Walworth*, 6 B. T. A. 788; *S. L. Fowler*, 6 B. T. A. 250.

The cases collected above are singularly free from conflict as to the principle governing the issue raised. From them we conceive the rule to be that income *per se* can not be assigned to relieve the assignor of the tax levy, but, where the thing assigned was a property right, real or personal, productive of income, income thereafter arising from such property is income to the assignee by virtue of his ownership. Applying the rule to this case, one-half of the royalty

income from the lease granted prior to the assignment was income to petitioner's wife and could be taxed only to her under our conclusion that the assignment conveyed to her one-half of the property in the right to receive royalty. As to the lease executed subsequent to the assignment, no such property in the right to the royalty was conveyed to the wife and such royalty was income to petitioner as the owner of the property, irrespective of any disposition he may have made after its receipt. We express no opinion as to whom royalties paid to an assignee in accordance with an executory contract as in *Miller* v. *Sooy, supra*, would be taxable, as no such question is presented under our conclusion upon that point. It follows that the respondent, in taxing the whole of the royalty income to petitioner, erred to the extent of one-half of the royalties received from the earlier lease.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

Murdock, dissenting: I dissent from a part of the foregoing opinion for the reason that in my judgment the husband in this case can only be said at most to have assigned the future income from his leases. This does not relieve him from tax upon such income when derived from the leases.

Sternhagen agrees with this dissent.