# CHARLESTON

## HORNER v. GAS COMPANY.

Submitted September 13, 1910.    Decided November 19, 1912.

1. MINES AND MINERALS—*Lease—Grant of Interest—Construction.*
    A deed granting "all of the one half of the royalty, being the

71 W. Va.

one sixteenth, of all the oil and one half of all the gas within" a tract of land, there existing at its date a lease by the grantors in such deed to another party providing for delivery to the lessors in a pipe line by the lessee of one eighth of the oil to be produced and for payment to lessors of $300.00 per year for each gas well used, does not grant one half of one eighth of the oil and one half the gas in place in the ground, but passes right to have delivered in the pipe line by the lessee one half of one eighth of oil produced, and one half the $300.00 rental for a gas well. (p. 347).

2. JUDGMENT—*Res Judicata.*

A decree dismissing a bill is not a bar as *res judicata* as to a matter not in controversy and on which there was no issue. (p. 850).

Appeal from Circuit Court, Harrison County.

Bill by Lynn S. Horner against the Philadelphia Company of West Virginia and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

*George M. Hoffheimer,* for appellant.

*John Bassell,* for appellees.

BRANNON, PRESIDENT:

Amanda E. Martin, wife of T. W. Martin, owned a tract of 44½ acres of land, and her husband an adjoining tract of 29 acres. By deed of lease dated the 1st day of November, 1898, Martin and wife leased both tracts for a term of five years to William Michael for production of oil and gas, reserving to said lessors one eighth of the oil produced to be delivered by the lessee to the credit of the lessors in the pipe line, and reserving a rental of $300.00 per annum for each gas well. By deed dated the 18th day of December, 1899, Martin and wife granted to L. S. Horner and C. S. Sands for cash "all of the one half of the royalty, being the one sixteenth, of all the oil and one half of all the gas within" the tract of 44½ acres. There was no development under the Michael lease, and its term expired. By a deed dated the 2nd of November, 1903, Martin and wife leased the wife's 44½ acres to R. M. Orr for the development of oil and gas, providing for the same oil royalty and gas well royalty as had the Michael lease. This Orr lease came to the ownership of The Philadelphia Company of West Virginia, and under it that

company drilled a paying gas well on the 44½ acres. Sands died leaving by his will his wife as his legatee, and she by her agent accepted from The Philadelphia Company seventy five dollars as Sands' half of the half of the $300.00 rental for the gas well; but Horner refused to accept that sum of $75.00 and brought a chancery suit praying that he be decreed to be seized in fee simple of an undivided fourth interest in all the gas and an undivided thirty-second interest in all the oil on the 44½ acres, and that an account be taken of the gas which had been taken from the well, and The Philadelphia Company be required to pay Horner's share; that the Orr lease be held void as to his interest; and that all the oil and gas in the tract be sold and the proceeds given to those entitled, giving Horner his share; and that The Philadelphia Company be enjoined from further operation on the land for oil or gas. The case resulted in a decree dismissing Horner's bill, without relief, and he appeals.

What is the meaning of the granting clause of this instrument from Martins to Horner and Sands? Horner claims that it gives him and Sands one half of the very oil and gas themselves in the earth, not a mere part of the oil when brought forth by development, or part of fixed sum of $300.00 for the gas when the successful well has brought to daylight the hidden gas. The Philadelphia Company, on the contrary, claims that Horner and Sands are entitled only to half of the $300.00 annual gas well rental or royalty; that it has not to account to them for half the gas flowing from the well, as if they owned it, but that it owns all the gas produced from the well. The question is nice. We note that the deed contains the word "royalty" as the first word in the mind of the parties. We may know that it imports, in oil and gas leases generally used, a share of the product of the well. It is perhaps often regarded as applicable to the share of the oil, not to the specific sum fixed for the gas well; but not infallibly; it depends on the context and circumstances under which it is used. Generally, its legal import is a tax, a duty, a share imposed, like rent of a farm, for the privilege of using a property, a portion or sum given the author of a book for the use of his manuscript, to the inventor for the use of his patent; to the landowner for the use of his oil or gas. The sum fixed for the gas well is a tax, or duty, or royalty, as well as the portion of oil. In

the deed before us it is used. The grant is "one half of the royalty"; that is the thing granted. Then the clause proceeds to define the royalty by saying it is the half of the royalty, that is one sixteenth of all the oil and half of the gas. We say that the word "royalty" is leading, and that the further language defines what half of the royalty is; that is, one sixteenth of oil and half the gas; but in saying what that means we must not forget that word "royalty." This construction is fair on the words; but it is confirmed by the fact that when this deed was made there existed the lease for oil and gas made to Michael, providing royalties to the landowners for the use of the land, one eighth of the oil delivered in the pipe line, not to the lessors in kind, and $300.-00 payable in money to the lessors for each well. That fact tells us what the leading word "royalty" was intended to mean. The lease provided for both; the deed to Sands and Horner provided for both. Can we fairly say that the transfer to Horner and Sands meant only half of the eighth of the oil after production, not in the ground; but as to gas, that it passed the gas in the earth? That the landowners, though still owning the oil in the ground, had debarred themselves from its use by the lease to Michael, he having the right to take it all? We cannot think they designed to convey the very oil when they had passed the right to take it to Michael; we cannot think they intended to sell what they did not own. So as to the gas. They had sold it, only reserving a money rent of $300.00 per well. Having sold oil and gas both, we are enabled to say that by the deed to Horner and Sands Martin and wife only intended to pass the half of what they were authorized to transfer, half of the royalty they had reserved, that is, half the eighth of the oil and half the $300.00 for each gas well. This Michael lease existing, and surely known to the parties, and providing taxes or dues or rents for the use of the land for oil and gas, shall we not say that the parties treated with eyes open to it, meaning to transfer to Horner and Sands half of what the lease gave to the landowners, a fraction of oil produced, and a specific rental or royalty for a gas well? I confidently assert that the parties contracted with a view to the Michael lease, meaning to pass to Horner and Sands one half of what that lease gave to Martins. That least gave light and direction to the transfer to Horner and Sands; that

light reflects on the deed to Horner and Sands, and other light would be misguiding. We must interpret the transfer to Horner and Sands by that lease. Let us suppose that the lease then existing should lapse without development. Could Martin and wife make a new one with less royalty? Horner says they could not, because he and Sands owned a sixteenth of the oil and half of the gas in the tract. We cannot believe that for the sum of $445.00 Martin and wife would sell absolutely in fee that large fraction of oil and gas, and thus renounce control so as to debar themselves from again leasing the entirety. We have placed ourselves in the situation of the parties at the time of the transfer to Horner and Sands, having the fact of the Michael lease as a circumstance then existing and known to the parties. Circumstances surrounding the parties so far are those shown by documentary evidence. We have thus far treated the case as shown by documents. But certain oral evidence was given going strongly to sustain the construction placed by The Philadelphia Company and the circuit court upon the deed of Martin and wife to Horner and Sands. That evidence discloses that Martin and wife did not in person deal with Horner and Sands, but engaged two agents to do so; that they authorized these agents to sell only half of the royalty reserved in the Michael lease; that Martin and wife so understood; and that the agents sold only that. Is this evidence admissible to explain the deed? It may be said that the deed is ambiguous. By our cases it is settled that oral evidence may be accepted, to aid in construction of a deed, where there is ambiguity, to apply the deed to its subject matter, to show the circumstances surrounding the parties so as to place the court in their place and circumstance, to reflect their intent; but prior or contemporaneous conversations of the parties are not admissible. *Crislip* v. *Cain*, 19 W. Va. 438; *Long* v. *Perine*, 41 W. Va. 314; *Martin* v. *Railroad Co.*, 48 W. Va. 542. The oral evidence referred to is not admissible.

Counsel for Horner goes so far as to assert that "a grant of a royalty of oil or gas, or a share thereof, is a grant of the oil or gas, or a proportionate share thereof," and for support appeal to the common law principle spoken by much authority that a grant of rents and profits of land operates to grant the land itself. Coke Litt, 4, 6; 1 Jarman on Wills 741; *Beilstine Case*, 194 Pa. 152; *Green* v. *Biddle*, 8 Wheaton 76; *Hughes* v. *Tabb*, 78 Va.

330, and claiming that royalty is rent, the counsel argues that the right to royalty is right to the oil or gas in place; and thus Horner and Sands would have title to half the gas itself, not merely half of the $300.00 rental for the well. Where one is granted right to take rents and profits in kind, no doubt the land is granted, whether in fee, for life or years; but does that apply when he does not have right to take them himself? Rent reserved does not imply right or title to land. Royalty does not imply right to take the oil or gas themselves. Royalty reserved implies right to receive from another a return for the use of the land.

It is assigned as error that the decree pronounced by the circuit court is one of absolute dismissal, and is erroneous in not providing that it should not prejudice Horner's right to a share of the oil and gas rental. Reference is made to *Carberry* v. *Railroad Co.,* 44 W. Va. 260, and *Watson* v. *Watson,* 45 W. Va. 290 Those cases refer to decrees where there is no jurisdiction in equity. I do not think that rule applies in this case. There was no issue as to Horner's right to a fourth of the gas well royalty or his share of oil. The gas company conceded his right to a fourth of the $300.00, and tendered it to him. The decree could not possibly bar him as to it in future. The Watson case requires that there should be issue and controversy to constitute a bar. See many cases. *Chrisman* v. *Harman,* 29 Grat. 494; *Albaugh* v. *Coakley,* 75 Va. 637; *Darant* v. *Essex,* 7 Wall, 197. To bar the decree must be on the merit of the matter in issue. We do not think there is error in this matter. But as a matter of precaution we will provide in our decree that it shall not prejudice Horner's right to his half of one sixteenth of oil or his fourth of the three hundred dollar gas well rental. With such modification the decree is affirmed.

*Affirmed:*