Miller v. Sooy.

No. 26,342.

C. O. MILLER, *Appellee,* v. E. C. SOOY, EVELYN SOOY and THE FIRST
NATIONAL BANK OF GREAT BEND, *Appellants.*

SYLLABUS BY THE COURT.

1. ASSIGNMENTS—*Rights Assignable—Oil and Gas Leases Not Existing.* An
instrument in the form of an assignment of a half interest in all royalties,
rents and bonuses to accrue to the assignor under an existing oil and gas
lease on certain land, or under any oil and gas leases thereafter executed
thereon, is held to be valid and enforceable with respect to the subsequent
leases as well as that already in existence.

2. PERPETUITIES—*Interests Subject to Rule—Leases Not Running With Land.*
The instrument referred to in the foregoing paragraph is construed as
covering only leases executed by the assignors, and as, not running with
the land, and therefore as not subject to attack on the ground of violat-
ing the rule against perpetuities.

3. ASSIGNMENT—*Oil and Gas Leases Not Existing—Interest Conveyed.* An
assignment of a half interest in the royalties and rents to accrue to the
assignor from oil and gas leases thereafter executed by him on certain
land does not pass the title to a half interest in the oil and gas in place,
inasmuch as the assignor, having assumed no obligation to make any
lease, is at liberty to develop the land for himself.

Appeal from Barton district court, RAY H. BEALS, judge. Opinion filed
January 9, 1926. Affirmed.

*William J. Morse,* of Kansas City, for appellants E. C. Sooy and Evelyn
H. Sooy.

*R. C. Russell,* of Great Bend, and *H. H. Schwartz,* of Casper, Wyo., for
the appellee.

The opinion of the court was delivered by

MASON, J.: In 1918 and 1919 E. C. Sooy and Evelyn H. Sooy,
the owners of several tracts of land, executed three writings, each
purporting to sell, assign and transfer to C. O. Miller, an individual,
half interest in all the "royalties, rents, bonuses and other con-
siderations" to accrue to them by virtue of any oil and gas lease,
covering any part of such land, that was then in existence or that
might thereafter be executed. An oil and gas lease was already
in existence, which, however, expired without development on
April 21, 1922. This action was brought by Miller to recover from

Assignments, 5 C. J. pp. 854 n. 47, 871 n. 63-64.  Chattel Mortgages, 11 C. J.
p. 435 n. 22.  Mines and Minerals, 27 Cyc. p. 742 n. 87.  Perpetuities, 30 Cyc. p.
1481 n. 74.

the Sooys one-half the rentals received by them since January 1, 1923 (payments having been made to that time), on leases made by them upon the lapse of the earlier one. The facts are agreed to. Judgment was rendered in favor of the plaintiff, and the defendants appeal.

1. The defendants assert that the assignment of rentals to be obtained from an oil and gas lease which has not at the time been entered into is a nullity. The general rule invoked, with comments thereon, has been thus stated:

"It has been held generally that an assignment of profits or wages to be earned in the future is void if, at the time of the assignment, there is no existing contract or employment under which such profits or wages are to accrue, the reason usually given being that such future earnings constitute a mere possibility not coupled with an interest, and sometimes that the assignment is too vague and uncertain to be sustained as a transfer of property. In some jurisdictions, however, while such an assignment conveys to the assignee no present right, either legal or equitable, yet it operates, when the wages have been earned, to give the assignee an equitable right to collect them from the employer." (5 C. J. 871.)

Cases sometimes cited as supporting what is said to be the general rule turn upon a matter of procedure, the right denied to the assignee of something to be received under a contract not yet entered into being merely that of obtaining relief at law as distinguished from equity. To illustrate: The defendants' brief contains the quotation: "Without a present contract, there cannot be a valid assignment either at law or in equity of *wages* to be earned in the future, for the reason that under such circumstances future earnings constitute a mere possibility not coupled with an interest." (*Close v. Gravel Co.*, 156 Mo. App. 411, 418.) But in the opinion this is followed (after the citation of authorities) by these words: "The *wages* for this reason could not, strictly speaking, be assigned, but the attempted assignment would create an equitable right."

In *McFarland v. Stanton Manufacturing Co.*, 53 N. J. Eq. 649, 650 (quoted in 2 R. C. L. 597) it is said:

"The rule as to the equitable title to contingent interests and expectations, and to things not *in esse*, is different; the equitable title to things not in actual or potential existence, may pass by assignment, the equity in the assignee attaching to the contemplated thing the instant it comes into being."

In a note on the assignment of mere possibilities or contingencies not coupled with any present interest it is said:

"Although an assignment of mere possibilities or contingencies is void at

Miller v. Sooy.

law, still an assignment for a valuable consideration of demands, having at the time no actual existence, but which rests in expectancy only, is valid in equity as an agreement, and takes effect as an assignment when the demands intended to be assigned are subsequently brought into existence." (94 Am. Dec. 646, 650.)

The assignment of a mere expectancy—the hope of acquiring property by descent—is enforceable in equity (*Clendening v. Wyatt*, 54 Kan. 523, 38 Pac. 792; note, 17 A. L. R. 601), and a chattel mortgage on property to be subsequently acquired is upon equitable grounds held valid between the parties. (*Cameron, Hull & Co. v. Marvin*, 26 Kan. 612, 628-9; 11 C. J. 435; 5 R. C. L. 404.)

In 1 Williston on Contracts, § 414, pp. 769, 771 and 772, it is said:

"Apart from statute, however, a complete legal title, even in existing choses in action, cannot be transferred. The practical effect of assignment of such property is produced whether the parties so state or not, by the legal authority of power of attorney which the owner of the claim gives to the assignee to collect it and keep the proceeds, and what may be called an equitable ownership as hereafter definded. The same kind of effect can easily be given if desirable to an assignment of a future claim. It is possible to assign a claim the performance of which is not yet due, and apart from considerations of public policy there seems no limit to this principle. An agent may be appointed to collect all money which shall be due in the future, not only under existing contracts but under future contracts, as readily as to collect what is due at the present time. . . . In any event it would seem that every court would admit that authority given to an assignee to collect a claim arising under a future contract is valid until revoked either in fact or by operation of· law, as by the death of the assignor. The effect of an assignment of such claims now seems in most jurisdictions analogous to that produced by an assignment of a present claim under the law existing prior to the protection by courts in equity of such assignments. . . . As has been seen the assignment of future earnings cannot be regarded as an immediate transfer of any property, but the assignee has an authority or power to collect, and an implied agreement on the assignor's part not to revoke this power."

A valid assignment may be made of the future product, growth or increase of property in which the assignor has a present interest. (5 C. J. 854.) In this connection we think the rentals and royalties from oil and gas leases to be thereafter executed by the defendants may be regarded as analogous to the product of the lands they owned and therefore assignable under that rule. Such payments are not entirely like the rents received under an ordinary agricultural lease, but they are compensation for the grant to the lessee of privileges with respect to the land and the minerals therein

—compensation for rights carved out of the full ownership held by the lessor, by a contract employing the usual means by which the owner of land underlaid by oil and gas realizes upon that part of his property.

The defendants say in their briefs:

"The assignments, by their terms, clearly purport to be present conveyances—their wording is 'hereby sell, assign, transfer and set over . . . the undivided one-half interest,' etc. They do not purport to be contracts by which the appellants agree hereafter to pay to appellee a share of whatever rentals may accrue to or be received by them under any leases which they may or shall hereafter make. They purport to be present conveyances of something—and the question is, are they valid as such? That is to say, can there be a valid conveyance of a subject-matter which has neither an actual nor a potential existence at the time of the conveyance?"

Especially in view of the fact that the defendants paid the plaintiff one-half the rentals received under the leases in question for the period ending January 1, 1923, there would be no difficulty in interpreting the assignment as a contract to pay to the plaintiff half the rentals and royalties as they mature.

It is of course immaterial here whether the rights acquired by the plaintiff under the assignment are legal or equitable. We hold that the contract is valid between the parties and imposes upon the defendants the duty of dividing with the plaintiff the rentals or royalties received and to be received under the leases.

2. The defendants contend further that the assignments are invalid because violative of the rule against perpetuities, inasmuch as they relate to all leases upon the land with no limit whatever as to when they shall be made. This contention involves the assumption that the obligations of the assignments run with the land and continue indefinitely. We think this assumption is not well founded. The assignments do not in terms bind the assignors' successors and assigns. They purport to assign to the plaintiff a half interest in the royalties and rents accruing and to accrue to them by virtue of an oil and gas lease then in existence "or under and by virtue of the terms of any other oil and gas lease, which may now exist on said premises above described." We think the fair interpretation of the language is that it relates to leases made and to be made by the defendants, and not to those which might be executed by subsequent owners of the land.

3. The plaintiff contends that the assignments amount to an actual transfer to him of the title to an undivided half interest in

Miller v. Sooy.

the oil and gas underlying the land affected, upon the principle that a grant of the profits of land is a grant of the land itself. We think this theory unsound, under the facts of this case, for the reason that the defendants did not agree that they would make any future leases at all—merely that a part of the income from any they should execute should go to the plaintiff. It seems clear that the title to the oil and gas did not pass to the plaintiff, for the defendants might have elected to develop the land themselves on their own account, in which event the plaintiff would have had no claim to the oil and gas produced. Or if they had seen fit to allow the land to remain undeveloped, there is nothing he could have done to derive a benefit from his assignment.

In a number of West Virginia cases it has been said that "a grant of the royalties, rents and income arising from the production of the oil from land is a grant of the oil in such land." (*Paxton v. Oil Co.*, 80 W. Va. 187, and cases there referred to.) In the case just cited the grant was of one-sixteenth of all the oil and one-half of all the gas underlying certain tracts, including one-half of all the royalties, incomes and rentals to arise by virtue of any oil or gas lease then on the land or thereafter placed there. The proportion based on the royalties was held to prevail over that named in connection with the oil and gas, but the fact that an interest in the minerals themselves was explicitly conveyed had manifest value in determining the effect to be given the grant. In *Updegraff v. Coal & Land Co.*, 74 W. Va. 316, a deed to a tract on which there was an oil and gas lease reserved to the grantor the interest in the premises covered by the lease and the royalties in connection therewith. It was held that on the forfeiture of the lease the rights to the oil and gas reverted to the grantor in the deed, and did not pass to the grantee. In *Toothman v. Courtney*, 62 W. Va. 167, it was said:

"Though he did not reserve by name the oil in place, or any part of it, his reservation of all the rental or royalty to be derived from it, compels the court to hold, by construction of the instrument, that it vests in him the title to that thing, the beneficial use whereof has been reserved, namely, the oil in place." (p. 175.)

And in the same connection:

"The oil was already under lease and the royalty, or oil rental, is all it can ever yield to its owner. That reserved to Toothman, he has the entire beneficial use of the oil, the equivalent of the ownership of it in place. . . . If there had been no lease on the land, I would be of the same

opinion, for a reservation of all possible benefit of the oil is tantamount to a reservation of the *corpus* thereof." (p. 176.)

While it is by making leases that the owner of oil and gas lands ordinarily derives revenue from the minerals, we do not think the practice is to be regarded as so nearly universal that the possibility of his developing his own property may be entirely ignored, even if it might be assumed that actual explorations will be made on a lease, and that if oil or gas is struck the leased premises will be fully developed and worked out thereunder.

The judgment is affirmed.