**BING v. BOWERS, Collector of Internal Revenue.**

**SAME v. ANDERSON, Collector of Internal Revenue.**

District Court, S. D. New York.    September 13, 1927.

1. **Internal revenue** ⊄⊃7(37)—**Actual and bona fide gift or assignment may be made to members of family, though for purpose of reducing total income tax.**

A gift or assignment to members of one's family is proper, even though it be for the purpose of cutting down total family income tax contribution to the government, as long as the gift or assignment is actual or bona fide.

2. **Assignments** ⊄⊃72—**Unambiguous granting clause controls, despite doubts arising from recitals in instrument.**

In case granting clause of instrument granting money payable annually and called an annuity is entirely unambiguous, it will control, despite doubts that will arise from recitals contained therein.

3. **Internal revenue** ⊄⊃7(37)—**Granting clause of instrument creating annuity payable from rents, income, and profits did not pass interest, or create rent charge, precluding taxation of interest to grantor.**

Granting clause of instrument creating a so-called annuity payable out of rents from real estate, granting and transferring to grantee certain sum out of rents, income, and profits from interest in property, *held* not to pass interest in property, or create rent charge or any ownership pro tanto of grantor's interest sufficient to relieve grantor from including such amount in determining gross income subject to taxation.

**4. Assignments ☞72—Entire instrument must be examined, in case of reasonable doubt as to correct interpretation of granting clause.**

In case of reasonable doubt as to correct interpretation of granting clause of instrument granting sums of money, called an annuity, the entire instrument is to be examined to determine meaning.

**5. Internal revenue ☞7(37)—Income from property to which owner had assigned sums payable from net income, retaining control thereof, held taxable to owner.**

Where instrument executed by son assigned to mother certain so-called annuities, payable out of income from interest in property, did not pass his interest or create a rent charge, or any ownership pro tanto of his interest in property, and grantee was at best only entitled to net income or to stipulated sums to be paid therefrom, and grantor maintained right of control, the income ·received therefrom was taxable to grantor, notwithstanding the instrument was in form proper for a grant of interest in real estate.

**6. Internal revenue ☞7(37)—Income is taxable to owner granting it as gift in advance of receipt.**

Where assignor of future income from property remains the owner thereof, the income therefrom is taxable to him as fully as when he grants it as a gift in advance of his receipt, as it clearly is, despite a gift thereof immediately after its receipt.

At Law. Separate actions by Leo S. Bing against Frank K. Bowers, Collector of Internal Revenue for the Second District of New York, and against Charles W. Anderson, Collector of Internal Revenue for the Third District of New York. On motions to dismiss. Motions granted.

M. S. & I. S. Isaacs, of New York City (John W. Davis and Lewis M. Isaacs, both of New York City, and Blount Ralls, of counsel), for plaintiff.

Charles H. Tuttle, U. S. Atty., of New York City (Nathan R. Margold, Asst. U. S. Atty., of Cambridge, Mass., of counsel), for defendants.

MACK, Circuit Judge. These actions are to recover income taxes assessed for the years 1918, 1919, and 1920, and paid under protest. The question involved is whether, under the circumstances hereinafter stated, the income on which the taxes were assessed was income to plaintiff or to his mother. The solution depends upon the construction of certain instruments duly executed in the form required under the laws of the state of New York for the grant of interests in real estate.

The first instrument was executed January 2, 1918. After reciting plaintiff's desire to assign to his mother for the term of five years or until her death the net income and profits from his interest in certain property thereafter specified to the extent of $9,600 per annum, payable in equal monthly installments, and the consideration of $1 paid and love and affection, plaintiff does "hereby grant, bargain, sell, assign, transfer, and set over unto the said Louisa Bing," for the period hereinabove stated, the aforesaid sum *"out of my share of the rents, income, and profits* from my interest in all the property, real and personal, conveyed or to be conveyed" by a certain company named to another company. The instrument provides: "This annuity shall be and the same is hereby made a charge upon my interest in the said property and the income therefrom for the said term of five years, or until the death of the said Louisa Bing." The last-named company is then directed, "upon receipt of this document, to cause such sums to be paid to the said Louisa Bing as aforesaid." This instrument was canceled one year later, and a similar instrument executed, providing for the payment of $19,200 instead of $9,600. This latter instrument is involved in the first cause of action in the Anderson Case; the earlier one is involved in the Bowers Case.

The second cause of action against Anderson covers the taxable year 1920, and covers payment of $15,642 as the entire net income and profits from a certain property from January 1, 1920, to July 1, 1920, and $67,019.87 as the entire net income and profits from January 1, 1920, to January 1, 1921, from another piece of real estate. The first of these sums was received by Mrs. Bing pursuant to· plaintiff's instrument, dated December 16, 1919. It likewise recited his desire to assign to his mother for a term of two years, or until her death, "the net income and profits from my interest in" two certain apartment houses, and stated the same consideration as the earlier instruments. The granting clause in this instrument however, gave *"the net income and profits* from my interest in the aforesaid two apartment houses, to. be paid to her in monthly installments during the said two years or until her death out of the net profits from the said buildings." There was also an "annuity" clause entirely similar to that above quoted from the first deed.

Because plaintiff sold his half of one property to his brother and bought from him his half of the other piece, thus giving plaintiff entire ownership of the fee therein, a modifying deed was made to the mother on June 30, 1920. She joined therein to relinquish her rights "in the net income and

profits" of this first piece, and consented to the cancellation of the "aforesaid assignment of income and profits," so far as it "pertained to the net income and profits" from the first piece. Under this deed she was given *"the net income and profits from the interest in"* the other property "to be sold and assigned to the said Leo S. Bing by" his brother. Under the two deeds she was thus given "the entire net income and profits" of this other property from July 1, 1920.

It is contended on the one hand that each of these instruments forthwith vested in the mother ownership pro tanto of a definite interest in real estate, or at least a rent charge therefrom, or that in any event the instruments constituted a perfected present assignment of the moneys thereafter to be received, so that the moneys, when received by her, became her income without having previously been part of the gross income of the plaintiff. On the other hand, it is contended that, under all of the instruments properly interpreted, the entire receipts from the properties became gross income of the plaintiff, since it was only after net income had accrued therefrom and become ascertained that the mother was to be entitled to anything under any of the deeds, and that therefore the entire amount paid to her was properly taxable to the plaintiff.

Plaintiff had an interest in fee in all of these properties, in some as cotenant with others, in one as owner of the entire property. While title was apparently vested in the corporation, inasmuch as it had no active duties, the legal title under New York law was in the individuals, to whom so-called certificates of ownership stating their respective interest had been issued.

Under an agreement of the co-owners the management of all of the properties was in the hands of Bing & Bing, who, acting for and in behalf of the certificate holders, collected the rents, performed all of the other activities in connection with the management and preservation of the property, and paid over the monthly installments directly to the mother, pursuant to the provisions of the respective instruments, and of the notation indorsed on the ownership certificates after the execution of the deeds, reading respectively, "Subject to the direction to this company to pay income to Louisa Bing," or "Subject to the assignment of income and net profits from the share of Leo S. Bing," etc.

In the brief submitted on behalf of the government, the third instrument is first considered as being the clearest in expression of intention, and in a sense it is suggested that light can thereby be thrown backward to illuminate and thus make clear the more doubtful language used in the earlier deeds. I cannot, however, adopt this method of interpretation. While it may well be that plaintiff intended all of the grants to the mother to have the same legal significance, the question as between him and the government is whether or not each instrument can fairly be said to carry out that intention.

[1] There is in my judgment no impropriety in making a gift or assignment to members of one's family, even though it be the very purpose of cutting down the total family income tax contribution to the government, as long as the gift or assignment is, as in this case, actual and bona fide. Whether or not plaintiff was actuated by this motive is therefore immaterial. The question to be answered is: Has he succeeded legally in effectuating that purpose or in producing that result?

Coming, then, to a consideration of the first and second deeds: Clearly there was a grant of a specific sum. Was this a rent charge? It is unnecessary to go into an elaborate consideration of the history and development of the law of rents. See Langdell, 10 Harv. Law Rev. 71; Williams, 11 Harv. Law Rev. 1. It suffices that a rent charge is still recognized in New York as an interest in the land itself.

[2] If the granting clause were entirely unambiguous, it would control, despite doubts that might arise from the recitals. The grant is of a definite monthly sum, "to be paid out of my share of the rents, income, and profits from my interests in all the property, real and personal," etc. The grant was thus not limited to rents, income, and profits of real estate; those from personal property were also included.

It may well be that at the time of the grant the property was so well rented, or was sure to be so rented, that the net income in the judgment of the parties would certainly yield at least the specified sum. On that assumption the parties might well use an expression normally indicating a grant out of gross rents, even though the basic purpose was to have it come only out of the net return. But, properly to interpret the granting clause, it is necessary to consider the situation that would arise if, by reason of fire or other casualty, the gross, but not the net, rental equaled or exceeded the amount due to the mother. If income from insurance money, perhaps the personal property referred to in the deed, would be applicable to

the deficiency, then the grant is not a rent charge, an interest in and payable only out of realty; that is, out of the actual gross returns from the real estate. If the deficiency, then, cannot be dealt with in this way, who, under the grant, was to bear it. If "rents" alone had been the word used, it might well be held that, unless modified by the recitals, a part of the gross rents was granted. But gross rents are not "the income and the profit" of the owner from the rental of the building.

Before his actual income and profit, whether as sole owner or cotenant, can be determined, there must be deducted from the gross rentals the maintenance and management expenses. While the parties doubtless did not consider the possibility above stated, nevertheless it would seem clear that, in such an event, only the net rents—that is, the actual income and profits—would be the fund out of which payment was intended to be made to the mother.

[3] The property was under the management of the firm of Bing & Bing; the control over the managers was in the owners; subject to liability for breach of contract, the owners could terminate the agency. Can it be said that the mother was intended to have a share in this control; that plaintiff, though retaining his ownership in fee, made a grant of such an interest therein as would vest the grantee with a legal estate, a rent charge, in the property, an estate which would give her at common law the right to distrain, and in modern times a direct action against the parties in possession. It is to be remembered that the agents are alleged in the complaints to act on behalf of the certificate of ownership holders. No such certificate was issued to the mother. Plaintiff, after the deeds in question, retained his full rights to be represented by and, subject only to his contractual obligation with them and his co-owners, to control the agents, without interference by the mother.

In my judgment, the granting clause did not pass this interest in the property—this rent charge or any ownership pro tanto of plaintiff's interest in his property.

[4, 5] But, if there is at least a reasonable doubt as to the correct interpretation of the granting clause, the entire instrument is to be examined. The express charge of the so-called annuity on plaintiff's interest, both in the property itself and in the income, is but the giving of collateral security for the protection of whatever rights were theretofore granted, whether they were a rent charge or a share in net income. On the other hand,

the recital preceding the grant is a clear, express statement of the intention that the payments are to be made out of net and not out of gross rents. The fact that the instrument was in form proper for a grant of an interest in real estate cannot, in my judgment, weigh against these considerations.

If, then, no title to the property, or to any interest therein, and no rent charge on the property, was created by the earlier deeds, there can be no doubt as to the effect of the later grants in this respect. For here, not only in the recitals, but also in the granting clause itself, it is the "net income and profits" that are sought to be conveyed. The fact, stated in the brief, that the mother, but not the plaintiff, subsequently took credit in the income tax returns for the expenses of maintenance and management, even if pleaded by way of amendment, would not affect this interpretation. It could not retractively throw light on the intention when the deed was executed.

The effective difference between a grant of the entire property rights for the period in question, with a contractual obligation imposed to maintain the properties, and a grant of the net income to be derived from the property, is that in the former control is vested in the grantee; in the latter, it remains in the grantor. I can find no intention to vest control over the property, or over the managing agents, in the mother; and yet that would be the effect of a grant of the entire estate for the two-year period. She could ultimately determine all questions of maintenance and management; for while, as counsel argue, plaintiff may have anticipated that the agents would continue to manage the property and pay over to his mother instead of to himself the net rentals, the agents as such had no legal interest in the estate. Their rights were subject to termination by the one legally entitled to the entire gross rentals. A grant of "net income" cannot, therefore, be deemed equivalent to a grant of gross rental with an obligation of maintenance, tax payment, and insurance.

It is clear, too, that none of the deeds effectuated a transfer pro tanto or fully of existing rights to rentals reserved in leases, as distinguished from the creation of a new rent charge. Even if the pleadings were amended to allege that the properties were rented in whole or in part at the execution of each deed, the words of grant do not purport to convey the whole or part of such rents; the landlord's interest, whether in all of such leases or in certain ones, was not transferred to the extent of $9,600 or $19,-

200 in the earlier deeds, or in their entirety under the later deeds. An intent so to transfer could have been aptly expressed. Under these deeds, the intent seems clear not to limit the grantee's rights to rents from existing leases, thereby excluding rents from renewals thereof, or from new leases on then unrented apartments.

If, then, no interest in the land or rent charge was created, if the grantee was at best entitled only to the net income, or to the stipulated sums to be paid therefrom, did the plaintiff have the "use, benefit, and disposal" (Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 193 [64 L. Ed. 521, 9 A. L. R. 1570]) of the gross income from his interest in the properties, so as to be chargeable with the income tax thereon? The deeds were assignments of or from future net income, and made without valuable consideration. Whether in New York a seal makes such an instrument, assigning, not an existing chose in action, but at the best potential property, valid as an executed and not an executory assignment (see Hull v. Hull, 172 App. Div. 287, 158 N. Y. S. 743) need not be determined. For the question presented is not whether, as between grantor and grantee, the assignment is effective and enforceable, but whether the assignment, even if enforceable as against the grantor, should he or his agents fail to turn over the net income or the sums specified therefrom, prevents the entire gross income from being income taxable as against the grantor.

As hereinabove stated, the power over the creation of this gross income and over the expenditure therefrom that determined the net remained in the grantor, not as a trustee of the property itself, subject to the cestui que trust's right to appeal to a court of equity, but as his personal right uncontrolled. The gross income, like the principal, the property itself, was his. The right to determine the deductions therefrom was his; only when this power had been exercised, did the net fund, or he as its owner, become charged with the duty to perfect the gift by payment to the grantee, or in any case by not preventing the grantee from receiving therefrom the amount granted to her. Not until the net was ascertained could the grantee's right attach to any specific fund. Before that the grantor had received the rents as his income from the property.

[6] To permit the assignor of future income from his own property to escape taxation thereon by a gift grant in advance of the receipt by him of such income would by indirection enlarge the limited class of deductions established by statute. As long as he remains the owner of the property, the income therefrom should be taxable to him as fully, when he grants it as a gift in advance of its receipt, as it clearly is despite a gift thereof immediately after its receipt.

In Bowers v. N. Y. Trust Co. (C. C. A.) 9 F.(2d) 548, the court held that certain money received by a copartnership was received strictly as trustee, and therefore was not taxable as income of the firm. In Irwin v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897, the court held that a beneficiary of part of the income from a trust fund could be taxed thereon as his income, even though (page 167 [45 S. Ct. 476]) it was "income in the hands of the trustees." These cases are thus clearly distinguishable.

The court is indebted to counsel on both sides for a singularly able and clear presentation of arguments both orally and in writing.

The motions to dismiss must be granted.