## LEYDIG v. COMMISSIONER OF INTERNAL REVENUE.

### No. 230.

Circuit Court of Appeals, Tenth Circuit.

Sept. 8, 1930.

PHILLIPS, Circuit Judge, dissenting.

L. P. Brooks, of Wichita, Kan. (L. A. Hasty and J. B. Nash, both of Wichita, Kan., on the brief), for petitioner.

Randolph C. Shaw, Sp. Asst. to Atty. Gen. (C. M. Charest, of Washington, D. C., G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch, of Washington, D. C., on the brief), for respondent.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.

Appellant seeks a review of the decision of the Board of Tax Appeals. He and his wife made separate returns for 1918 and 1920, of a half royalty interest under two oil and gas leases. The Commissioner found a deficiency because he was taxable for both interests. The Board of Tax Appeals sustained the tax only under the second lease and reduced the amount to $13,407.98. That decision is in controversy.

The facts as found by the Board are as follows: The petitioner is an individual residing at Newton, Kan. Grace Leydig is his wife. They were married some time prior to January 1, 1900, and at the time of their marriage, the petitioner had three or four hundred dollars and his wife had about one hundred dollars, all of which they invested in live stock and feed. They rented a farm and made their home on it. The petitioner has even since been engaged as a farmer. During

all of this time his wife has assisted him in various ways with the farm work. She drove teams, shocked corn and oats, and did chores. She also made butter and sold butter and cream. On January 2, 1900, petitioner acquired title to the farm, in his own name, which he had formerly rented, and on February 7, 1903, he acquired title to an adjoining farm in his own name. The cash paid on account of the purchase of these properties and that used for the satisfaction of a mortgage on one of the properties was derived from the sale of farm products. Before the petitioner acquired these tracts of land and at the time he acquired them, he and his wife had an oral understanding that the wife was to have a one-half interest in the property.

On March 11, 1916, petitioner and his wife executed an oil and gas lease to W. M. Dedrick on a portion of the farm. By its terms it was to continue for one year and as long as any oil or gas should be produced from the land, in consideration of which the lessee was to deliver free in a connected pipe, or if no pipe lines, then in tanks, one-eighth of the oil and gas. A further stipulation was the lessee was to commence drilling within six months, otherwise to pay first parties $120 to extend the lease for the next six months, or the lease was to be terminated. Oil was struck on the farm in July, 1918. On August 3, 1918, petitioner and his wife executed a similar lease on a different portion of the farm to other parties, in substantially the same form, by which the lessees were to deliver to the credit of the lessors one-fourth of the oil and one-eighth of the gas produced.

On August 1, 1918, when petitioner was considering the making of the second lease he executed an assignment, which resulted from the advice of income tax advisors, that the oral agreement concerning the wife's share in the land be put in writing, as follows:

"Whereas, J. V. Leydig, now holds the fee title to the following described property, located and situated in Butler County, Kansas, to wit:

"The North Half (N½) of section eighteen (sec. 18) township twenty-three south (twp. 23 S) range four (R. 4) East, and, .

"Whereas, the acquisition of the said property was due to the joint efforts of the said J. V. Leydig and his wife, Grace Leydig,

"Now, therefore, in consideration of the sum of One Dollar, the receipt of which is hereby acknowledged and love and affection existing between and among the parties hereto, the said J. V. Leydig, hereby and by these presents does assign, set over, transfer and convey to the said Grace Leydig, an undivided one-half interest in and to any and all oil and gas royalty interests which may have been heretofore or shall be in the future received or retained by the said J. V. Leydig.

"Dated this the first day of August, 1918.
"[Signed]   J. V. Leydig."

On the same date, an instrument designated as an agreement was signed by petitioner and his wife covering the same property, as follows:

"Now, therefore, in consideration of the above mentioned assignment and an oral agreement existing between the parties hereto, the said J. V. Leydig, party of the first part and Grace Leydig, party of the second part, do hereby and by these presents agree that all monies derived from the said oil and gas royalty interests are the joint property of each of the parties hereto, and that said parties shall have equal access to and own the same, share and share alike, and may at any time demand an accounting for the monies so received or retained."

A contention of the petitioner is that the wife became a half owner of the land when it was acquired and for that reason owned one-half of the royalties. The Board ruled to the contrary as she furnished no consideration therefor and her title could not be enforced under the Statute of Frauds. The answer was that a third party may not question the title on either ground, or gainsay the trust capacity in which petitioner held the title. Concededly, he might have made an effective gift of a half interest in the land. Bing v. Bowers (D. C.) 22 F.(2d) 450, affirmed in (C. C. A.) 26 F.(2d) 1017. But his acquisition and retention of the legal title enabled him to assert or disclaim ownership at will, and subjects him to the entire tax under the rule announced in Wehe v. McLaughlin (C. C. A.) 30 F.(2d) 217. And the title may be attacked by the government in order to hold him as the legal owner for income taxes. Rosenwald v. Commissioner (C. C. A.) 33 F.(2d) 423.

The pertinent fact was they had an oral understanding that the wife was to have a half interest in the farm. This impresses us as too unstable a foundation on which to base actual ownership, considering it might readily have been vested by the deed to both, or a later deed by him, or a definite agreement.

His title could not successfully be assailed by the wife. It was as much within his control as if he held it in trust with power of revocation. In such a case the income is taxable to him. Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916. And her title was not better than if he had made an assignment of the income, subject to termination by him, when he would be liable for the tax. Cohan and Harris v. Commissioner (C. C. A.) 39 F.(2d) 540 and 546. But we interpret the "understanding," as counsel for the Board aptly say, to import a promise to do some act in the future, and as being only tentative—to be carried out later, meantime the property being his for all purposes. As stated, her title was too indefinite to establish her right to royalties from future leases.

Passing to the assignment of August 1, 1918, it is to be observed that as to the second lease here in question the transfer was of a half interest in any oil and gas royalty which should be in the future received or retained by him. The oil and gas belonged to the owner of the land, subject to the contingency of being taken by the drilling of an adjacent landowner into the pool. Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 44 L. Ed. 729. His interest was therefore transferable. But he was careful as before to retain the title to the land and not transfer it.

"Royalty" as applied to an existing lease consists of a share in the oil and gas produced, but does not include a perpetual interest in the oil and gas in the ground. Bellport v. Harrison, 123 Kan. 310, 255 P. 52. This assignment of royalty to accrue from a future lease, not in terms binding the assignor's successors and assigns, did not run with the land and pass title to the oil and gas in place, as the assignor was not obligated to make the lease and might develop the land for himself. Miller v. Sooy, 120 Kan. 81, 242 P. 140.

The assignment of royalty as it affected the second lease vested in the wife one-half of the proceeds of the oil and gas only when and if he should receive them, for practically lessors receive the current prices therefor from tank line companies. But until the event of production, there would be no effective transfer of royalty, and at that time the tax liability would have attached. This view is made clear by the contemporaneous agreement of petitioner and his wife, which was in terms "that all moneys derived from the said oil and gas royalty interest are the joint property of each of the parties hereto." Construing these instruments together, we are convinced there was no present assignment of royalty under the second lease.

With this understanding of the assignment and agreement, we think it clear that the controversy falls within the principle that an income tax is under the revenue statutes anticipatory and attaches to income before it passes to an assignee by a transfer effective in the future. Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731. We hold for this reason the decision of the Board of Tax Appeals should be and it is affirmed.

PHILLIPS, Circuit Judge, dissenting.

I respectfully dissent from the conclusion reached by the majority and will undertake to state my reasons therefor.

The assignment undertook to transfer to Grace Leydig all of the oil and gas royalties, either reserved by existing leases or to be reserved by leases to be executed in the future, on the lands described in such assignment. In the case of Miller v. Sooy, 120 Kan. 81, 242 P. 140, the court held that an instrument in the form of an assignment of a one-half interest in oil royalties, rents and bonuses to accrue to the assignor under any oil and gas lease, which the assignor might thereafter make on certain land, was valid and enforceable. The conclusion of the court in that case is based upon the theory that such an assignment is valid in equity and takes effect when the future lease comes into existence. While the court held that such an assignment did not transfer the title to the oil and gas underlying the land, it expressly held that such assignment effected a valid transfer of an interest in the royalties reserved in such future lease, upon such lease coming into existence.

In the case of Bellport v. Harrison, 123 Kan. 310, 255 P. 52, the court held that:

"The ordinary and legal meaning of the word 'royalty,' as applied to an existing oil and gas lease, is the compensation provided in the lease for the privilege of drilling and producing oil and gas, and consists of a share in the oil and gas produced. It does not include a perpetual interest in the oil and gas in the ground."

In Horner v. Gas Co., 71 W. Va. 345, 76 S. E. 662, 663, the court defined "royalty" as follows:

"Generally, its legal import is a tax, a duty, a share imposed, like rent of a farm,

for the privilege of using a property, a portion or sum given the author of a book for the use of his manuscript, to the inventor for the use of his patent, to the landowner for the use of his oil or gas."

In Kissick v. Bolton, 134 Iowa, 650, 112 N. W. 95, 96, the court held that the word "royalty," as employed in a coal mining lease, "means the share of the profit reserved by the owner for permitting the removal of the coal and is in the nature of rent."

The right to receive unaccrued royalties is a species of incorporeal hereditament. It is usually classed as real, as distinguished from personal property. State v. Royal Mineral Ass'n, 132 Minn. 232, 156 N. W. 128, Ann. Cas. 1918A, 145; Den ex dem. Farley v. Craig, 15 N. J. Law, 191; Hopkins v. Hopkins, 3 Ont. 223; Cox v. Snyder, 241 Ill. App. 475. It may be the subject of a grant or devise. Payn v. Beal, 4 Denio (N. Y.) 405; Hopkins v. Hopkins, supra; Ards v. Watkins Cro. E., 637, 78 E. Reprint 877. But whether such a right is real or personal property, an assignment thereof is a transfer of an interest in property.

If the assignment in the instant case amounted to merely an agreement upon the part of J. V. Leydig to pay Grace Leydig one-half of the future income, which he might receive from an oil and gas lease thereafter to be made, then he is clearly liable for the income tax accruing on the whole of such income. Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916.

On the other hand, if such assignment effectuated a transfer of an interest in property when the second lease came into existence, then J. V. Leydig is not liable for the income arising from such interest so transferred. Bing. v. Bowers (D. C. N. Y.) 22 F. (2d) 450; Id. (C. C. A.) 26 F.(2d) 1017.

The assignment employs the words "assign, set-over, transfer and convey," language commonly employed to transfer an interest in real property. It also uses the words "royalty interests," which aptly describe the subject matter of a grant. It is therefore my opinion that the assignment was not a mere agreement to pay money in the future, but that on the making of the second lease such assignment effected a transfer to Grace Leydig of one-half of the royalties reserved to the lessors thereunder.

It follows that the Board of Tax Appeals erred in holding J. V. Leydig liable for income taxes on the whole of the royalties derived from the second lease.